## TENNESSEE *v.* WHITWORTH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF TENNESSEE.

Argued January 22, 1886.—Decided March 1, 1886.

The right to have shares in its capital stock exempt from taxation within the State is conferred upon a railroad corporation by State statutes granting to it "all the rights, powers and privileges" or granting it "all the powers

and privileges," conferred upon another corporation named, if the latter corporation possesses by law such right of exemption : and there is nothing in the provision of Art. XI. Sec. 7 of the Tennessee Constitution of 1834 to change this general rule when applied to a statute of that State.

A State statute enacted that a railroad company should "for its government be entitled to all the powers and privileges, and be subject to all the restrictions and liabilities imposed" upon another railroad company : *Held,* That the words "for its government" implied for its regulation and control.

When two railroad corporations whose shares are by a State statute exempt from taxation within the State, and a third company created under the laws of another State and whose road is in the latter State, consolidate into a new company, and issue shares in the new company in exchange for shares in the old company, the right of exemption from taxation in the first State passes into the new shares and into each of them, unless a law of the first State makes provision to the contrary.

This, like the case between the same parties just decided, *ante* 129, was a suit in mandamus brought by the State of Tennessee to require the trustee and tax collector of Davidson County to assess for taxation the shares of the capital stock of the railroad company, and the only question not already disposed of was, whether the Nashville and Decatur Railroad Company had the same charter contract for the exemption of its capital stock from taxation as the Nashville and Chattanooga Railroad Company. The facts were these :

The Tennessee and Alabama Railroad Company was incorporated by the legislature of Tennessee on the 23d of January, 1852, to build a railroad from Nashville, by the way of Franklin, to the line between Tennessee and Alabama in the direction of Florence, Alabama. This company was granted by its charter "all the rights, powers and privileges," and subjected "to all the liabilities and restrictions conferred and imposed upon the charter of the Nashville and Chattanooga Railroad Company."

The Central Southern Railroad Company was incorporated by the legislature of Tennessee on the 30th of November, 1853, to build a railroad from a point of intersection with the Tennessee and Alabama Railroad at Columbia, by way of Pulaski, to the Alabama State line, in the direction of Athens and Decatur, Alabama, to connect with any railroad that might be

constructed from Decatur to the State line in the direction of Pulaski. This company also was given "all the powers and privileges," and subjected to "all the restrictions and liabilities prescribed in the charter of the Nashville and Chattanooga Railroad Company."

The Tennessee and Alabama Central Railroad Company was incorporated by the legislature of Alabama on the 19th of December, 1853, to build a railroad from Montevideo, Alabama, in a northeasterly direction, through Decatur, to some point on the boundary between Alabama and Tennessee, to connect with a railroad leading through Pulaski to Columbia, Tennessee. This company was by its charter authorized "to unite and consolidate into one road all or such part of the said road with any railroad that may connect with the said Tennessee and Alabama Central Railroad at the Tennessee line."

Each of these corporations completed its railroad in accordance with the requirements of its charter, and on the 19th of April, 1866, the legislature of Tennessee passed another act, Acts of Tenn. 1865–6, pp. 217, 220, §§ 5, 6, 9, and 10 of which are as follows :

"Sec. 5. *Be it further enacted*, That for the purpose of uniting and consolidating the Tennessee and Alabama Railroad Company and the Central Southern Railroad Company into one, the directors of said companies be, and they are hereby, authorized to agree upon the terms thereof, and to adopt all necessary and proper measures, agreements, and obligations to effect the same : *Provided*, said terms of consolidation, when perfected by the directors of said companies, shall be submitted to a vote of the stockholders of said companies, and if assented to by a majority of the stockholders, the same shall be binding upon said companies, and that thereafter, and upon official report thereof to the president of the respective companies and the comptroller of the State, said consolidated and united companies shall be known and styled the "Nashville and Decatur Railroad Company," by which name it shall sue and be sued, and be entitled to all the rights and privileges, and be subject to all the liabilities and restrictions of a body corporate.

" SEC. 6. *Be it further enacted*, That the said Nashville and Decatur Railroad shall, for its government, be entitled to all the rights and privileges, and subject to all the restrictions and liabilities conferred and imposed upon the Nashville and Chattanooga Railroad Company : *Provided*, that no State aid is intended to be extended to said Nashville and Decatur Railroad : *And provided further*, that no new liability to the State of Tennessee is intended to be imposed hereby upon said Tennessee and Alabama Railroad Company and the Central Southern Railroad Company."

" SEC. 9. *Be it further enacted*, That the Tennessee and Alabama Railroad and the Central Southern Railroad, thus consolidated, may, through their directors thus elected, be consolidated with the Alabama and Tennessee Central Railroad upon such terms as may be agreed upon between them, and approved by the stockholders of said roads, to be hereafter known as the Nashville and Decatur Railroad, such terms not to be in conflict in anywise with those herein contained, but may be supplementary or in addition thereto : *Provided*, the consolidation herein provided for be approved by act of the legislature of the State of Alabama, heretofore or hereafter passed, and said railroad, thus consolidated, may, by their stockholders, regularly convened, upon thirty days' notice in the newspapers of Nashville and Huntsville, elect directors to serve them for the term of twelve months, and until their successors shall be elected.

" SEC. 10. *Be it further enacted*, That the capital stock of said united companies shall be the aggregate amount of their respective charters, with the addition thereto of —— dollars ; and that this act shall take effect from and after its passage."

Under the authority of this act, and of section 22 of the act to incorporate the Tennessee and Alabama Central Company, the three companies were " united and consolidated under the style of the Nashville and Decatur Railroad," upon the terms indicated in the following resolution confirmed at a convention of the stockholders :

" *Resolved*, That under the authority delegated to the executive committee by the respective stockholders of the Ten-

nessee and Alabama, Central Southern, and Tennessee and Alabama Central Railroad Companies, the committee have agreed that the capital stock of each company shall represent the value of its road, and that therefore each of the companies herein mentioned shall surrender to the Nashville and Decatur Railroad Company, all of its rights, franchises, and property; the Nashville and Decatur Railroad Company assuming to pay all debts owing by the several companies, and being hereby especially pledged to protect all persons who have made themselves individually liable for the debts of any of the several companies, and that the stockholders of each company shall be entitled to, and receive credit for, the same amount of stock in the Nashville and Decatur Railroad Company that they own in any of the several companies; these constituting and comprising the whole basis of settlement."

This union was afterwards confirmed and declared valid by the legislatures of Tennessee and Alabama. The capital stock of the Nashville and Decatur Company was the aggregate of the stock of all three of the original companies.

Upon these facts the Circuit Court held that the shares of the capital stock of the Nashville and Decatur Company were exempt from taxation, and gave judgment accordingly. To reverse that judgment this writ of error was brought.

*Mr. Samuel Watson,* *Mr. James M. Head* and *Mr. S. A. Champion* for plaintiff in error made the points urged on behalf of plaintiff in error in *Tennessee* v. *Whitworth, ante* 129, and the following points in addition:

I. The charter of the Nashville and Decatur Railroad Company confers no exemption from taxation whatever. 1. The Central Southern and the Tennessee and Alabama Railroad Companies acquired no exemption from taxation whatever, for the reason that the grant to them of all the "rights, powers, and privileges" of the Nashville and Chattanooga Railroad Company was not intended to, and did not carry with it any exemption from taxation. (*a*) It has been decided by the Supreme Court of Tennessee that the grant to one company of

the "privileges" of another company does not carry an exemption from taxation. *Wilson* v. *Gaines*, 9 Baxter, 546. (*b*) This decision is not contrary to the decisions of this court ·on that point. The question has never been definitely raised in any of the cases decided by this court. *Humphrey* v. *Pegues*, 16 Wall. 244; *Tomlinson* v. *Branch*, 15 Wall. 460; *Southwestern · Railroad Co.* v. *Georgia*, 92 U. S. 676; *Chesapeake & Ohio Railroad Co.* v. *Virginia*, 94 U. S. 718; *Railroad Co.* v. *Gaines*, 97 U. S. 697; *Railroad Co.* v. *Georgia*, 98 U. S. 359; *Railroad Co.* v. *County of Hamblen*, 102 U. S. 273; *Wilson* v. *Gaines*, 103 U. S. 417.

II. The consolidation of the Central Southern and the Tennessee and Alabama Railroad Companies worked a dissolution of those companies, and thereby destroyed whatever exemption from taxation they may have originally possessed. *Railroad Co.* v. *Georgia*, 98 U. S. ·359; *Shields* v. *Ohio*, 95 U. S. 319; *Railroad Co.* v. *Maine*, 96 U. S. 499; *St. Louis, &c., Railway Co.* v. *Berry*, 113 U. S. 465.

III. The new company, the Nashville and Decatur Railroad Company, derived all its rights and privileges from the act of April 19, 1866, creating it a corporation. That act declares that the company "for its government be entitled to all the rights and privileges" of the Nashville and Chattanooga Railroad Company. It was not the intention of the legislature to confer upon the new company any exemptions from taxation whatever. The Nashville and Decatur Railroad Company was not incorporated for the purpose of building a new road, but of taking charge of, and operating, a road already constructed and equipped. There could, therefore, have been no motive on the part of the legislature to grant an exemption from taxation to the new company. *Chesapeake & Ohio Railway Co.* v. *Miller*, 114 U. S. 176. The words "for its government" in the Nashville and Decatur Charter are words of limitation, and definitely exclude the idea of exemption from taxation. *Railroad Co.* v. *Gaines*, 97 U. S. 697; *Railroad Co.* v. *Commissioners*, 103 U. S. 1.

*Mr. Edward Baxter* for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court. After stating the facts as above reported, he continued:

The question whether the capital stock of the Nashville and Decatur Company is entitled to the same exemption as that of the Nashville and Chattanooga Company depends, 1, on whether the grant to the Tennessee and Alabama Company of "all the rights, powers and privileges," and to the Central Southern Company of "all the powers and privileges" of the Nashville and Chattanooga Company, carried with it to the new companies the exemption from taxation provided for in section 38 of the Nashville and Chattanooga charter, and, if it did, 2, whether the Nashville and Decatur Company and its stockholders are entitled to the same exemptions as the original Tennessee corporations and their stockholders had.

As early as 1850, before either the charter of the Tennessee and Alabama Company or that of the Central Southern Company was granted, this court said in *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Maryland*, 10 How. 376, 393, speaking by Mr. Chief Justice Taney, that a statute which authorized the union of two railroad companies, and secured to the united company the "property, rights and privileges which that law, or other laws, conferred on them [the separate companies], or either of them," extended to the united company an exemption from taxation in the charter of one of the uniting companies, and this although it was at the same time said that "the taxing power of a State is never presumed to be relinquished, unless the intention to relinquish is declared in clear and unambiguous terms." This has been expressly reaffirmed in *Tomlinson* v. *Branch*, 15 Wall. 460; *Humphrey* v. *Pegues*, 16 Wall. 244; *Southwestern Railroad* v. *Georgia*, 92 U. S. 676; and the correctness of the decision was recognized in *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665; *Morgan* v. *Louisiana*, 93 U. S. 217; *Railroad Companies* v. *Gaines*, 97 U. S. 697, 711; *Railroad Co.* v. *Georgia*, 98 U. S. 359, 360; *Railroad Co.* v. *Hamblen*, 102 U. S. 273, 277; *Railroad Co.* v. *Commissioners*, 103 U. S. 1, 4; *Wilson* v. *Gaines*, 103 U. S. 417; *Louisville & Nashville Railroad Co.*

v. *Palmes*, 109 U. S. 244, 253; and *Chesapeake & Ohio Railroad Co.* v. *Miller*, 114 U. S. 176, 185.

From this it is clear that, under the settled rule of decision in this court, the exemption from taxation, which was one of the "rights and privileges" of the Nashville and Chattanooga Company, formed part of the charters of the Tennessee and Alabama Company and the Central Southern Company, unless a different rule is to be applied in Tennessee, because of a supposed limitation on the popular meaning of the words "rights," "powers" and "privileges" when used in statutes, on account of a peculiar provision of the constitution of that State. That constitutional provision is as follows:

"The legislature shall have no power . . . to pass any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law: *Provided, always*, that the legislature shall have power to grant such charters of corporations as they may deem expedient for the public good." Constitution 1834, Art. XI, sec. 7.

In view of this the Supreme Court of Tennessee decided in effect, at its December Term, 1877, in *Wilson* v. *Gaines*, 9 Baxter, 546, that as the State in its constitution used in the same connection all the words "rights," "privileges," "immunities," and "exemptions," each of these words must be given in statutory interpretation a meaning so limited as not to include anything expressed by the others, and that when any one of them is found in a statute the legislature must be conclusively presumed to have used it in this restricted sense. To this we are unable to agree. As has already been seen, the word "privilege," in its ordinary meaning, when used in this connection, includes an exemption from taxation. This court so decided a year before the charter of the Tennessee and Alabama Company was granted, and nearly three years before that of the Central Southern. In fact the Supreme Court of Tennessee does not seem to doubt that such would be its meaning but for the constitution, for in the opinion it is said, "However comprehensive a meaning may have been given the word 'privilege' by

the courts of other States, or by lexicographers, we are constrained to use it in the restricted sense and meaning given it by our laws and the constitution of the State. . . . A legislature acting under this constitution for its powers, and as defining its duties, must be conclusively presumed to have used a word or term of the constitution in the sense and with the meaning given it by that constitution." We see nothing in the constitution which gives to the word "right," or "privilege," or "immunity," or "exemption," any different meaning than that which it has among the people at large. There may be, and probably are, some immunities, and some exemptions, which would not be considered as either rights or privileges in the popular acceptation of those terms. It was to reach such immunities and such exemptions, as it seems to us, that this particular form of expression was used in the constitution, and not to provide that under no circumstances should the word privilege in a statute of Tennessee be held to include a privilege of exemption from taxation. Words in a constitution, as well as words in a statute, are always to be given the meaning they have in common use, unless there are very strong reasons to the contrary. We find no such reasons in this case, and, as an exemption from taxation is a privilege in the popular sense of that term, we feel ourselves compelled to decide that both the Tennessee and Alabama Company and the Central Southern Company were granted such an exemption by their charters, notwithstanding the contrary opinion of the Supreme Court of Tennessee, which, although entitled to great respect, is not binding upon us as authority under the circumstances of this case.

It only remains to consider whether the Nashville and Decatur Company is entitled to the same exemption. When two railroad companies unite or become consolidated under the authority of law, the presumption is, until the contrary appears, that the united or consolidated company has all the powers and privileges, and is subject to all the restrictions and liabilities, of those out of which it was created. *Tomlinson* v. *Branch*, 15 Wall. 460 ; *Branch* v. *Charleston*, 92 U. S. 677, 682 ; *County of Scotland* v. *Thomas*, 94 U. S. 682, 690 ; *Railroad Co.* v. *Maine*,

96 U. S. 499, 512; *Green County* v. *Conness*, 109 U. S. 104. From this it follows, that, as the capital stock of both the original Tennessee corporations was exempt from taxation, the capital stock of the united or consolidated company, formed by the simple aggregation of that of the two old ones, is also exempt, unless it has been provided to the contrary. Is there, then, anything in the statute authorizing the union which rebuts this presumption? We think there is not. The language relied on to show the contrary intention is this : " That the said Nashville and Decatur Railroad shall, for its government, be entitled to all the powers and privileges, and be subject to all the restrictions and liabilities, conferred and imposed upon the Nashville . and Chattanooga Railroad Company." This is the. exact language of the corresponding provision in the charter of the Tennessee and Alabama Company, one of the original companies, save only that the words " for its government " have been added. As we hold that this was sufficient to exempt the capital stock of the original companies from taxation, it follows that the new company is also exempt, unless the added words were intended as a limitation upon the effect of the others.

The rule is imperative that a relinquishment of the taxing power is never to be presumed. *Vicksburg, Shreveport & Pacific Railroad* v. *Dennis*, 116 U. S. 665. Under this rule, it was held in *Railroad Companies* v. *Gaines*, 97 U. S. 711, that the capital stock of the Knoxville and Charleston Railroad Company was not exempt from taxation, although by its charter that company was (p. 702) " invested, for the purpose of making and using said road, with all the powers, rights, and privileges, and subject to all the disabilities and restrictions that have been conferred and imposed upon the Nashville and Chattanooga Railroad Company," because (p. 712) " the grant was not of all the rights and privileges of the Nashville and Chattanooga Company, but of such as were necessary for the purpose of making and using the road, or, in other words, the franchises of the company which do not include immunity from taxation." To the same effect is *Railroad Co.* v. *Commissioners*, 103 U. S. 1, where the Annapolis and Elk Ridge Rail-

road Company was "invested with all the rights and powers necessary for the construction and repair" of its railroad, and for that purpose was to have and use all the powers and privileges, and be subject to all the obligations contained in the enumerated sections of the Baltimore and Ohio charter. This we held "was not a grant of all the powers and privileges of the Baltimore and Ohio Company, . . . but only of such as were necessary to carry into effect the objects for which the new company was incorporated," or, in other words, "such as were necessary to the construction, repair, and use of its railroad," and this did not include the privilege of exemption from taxation.

In all this class of cases the question is one of legislative intent, with a presumption against an intent to grant an exemption from taxation. Here there is no charter of a new corporation with power to build a new railroad. No new taxable property is created. The legislation contemplates nothing more than the making of one railroad corporation out of two old ones, each of which has a completed railroad and the privilege of an exemption of its capital stock from taxation. If nothing at all had been said about the powers and privileges of the new corporation, the presumption would have been that it took all which were possessed by the two original companies at the time of their union. To rebut this presumption it is necessary that a contrary intention should appear. The question is not as to a grant of new powers, but as to the taking away of old ones.

Such being the case, we cannot believe that the phrase "for its government" in the consolidating act was intended as a limitation on the powers and privileges of the new corporation. The natural meaning of the word government in such a connection is regulation and control, and we think it was used in that sense here. In reality it neither adds to nor takes from the force of the other words, and simply implies that the new corporation shall have the same charter rights and privileges, and be subject to the same charter restrictions and liabilities, as the Nashville and Chattanooga Company. Such were the charters of the old companies, and such was intended to be the

charter of the new ; no more, no less.    As was said in the court below, " the government of the corporation embraces every part of the conduct and business of the company in all its relations to the State, to the general public, to individuals, to its own stockholders," and consequently the grant of powers and privileges for its government was in reality the grant of the powers and privileges of its corporate entity.

The fact that the Tennessee and Alabama Central Company was under the authority of the consolidating statute brought into the consolidated company does not in our opinion alter the case in any material respect.    No new taxable property was in fact brought into Tennessee in this way.    While it added to the amount of the capital stock of the consolidated company, it was only because of capital actually invested before the consolidation in the Alabama railroad, and, taking the whole statute together, it is apparent to us that the legislature intended to give the new corporation in Tennessee all the powers and privileges, including exemption from taxation, which the old corporations were entitled to.    In fact we do not understand it is claimed that the rights of the parties, in respect to the present question, are changed because the two original Tennessee companies, after their union, were consolidated with the Alabama corporation.

We conclude, therefore, that the capital stock of the Nashville and Decatur Company is exempt from taxation in Tennessee, and consequently, for the reasons stated in the other case, that the shares cannot be assessed.    The judgment of the court below to that effect is

*Affirmed.*