# KEOKUK AND WESTERN RAILROAD COMPANY v. MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 182. Argued December 21, 22, 1893. — Decided March 12, 1894.

A railroad corporation, chartered in Missouri in 1857, with a provision that its property should be exempt from taxation for a period of twenty years after its completion, which took place in 1872, was consolidated with an Iowa corporation in 1870, under a general law of Missouri, and in 1886 the consolidated road was sold under a decree of foreclosure of a mortgage to purchasers who conveyed it to an Iowa corporation. *Held*, that the new organization held the Missouri road subject to the provision in the constitution of Missouri adopted in 1865, that "no property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this State, to counties, or to municipal corporations within this State."

The consolidation of the Missouri corporation, under the Missouri act of March 2, 1869, with an Iowa corporation, operated to extinguish the old company, and to form a new one as of the date of the consolidation, and the provisions concerning exemption from taxation from the old charter did not pass to the new company.

A mortgagee is not bound by judgments or decrees against the mortgagor in suits begun by third parties subsequent to the mortgage, unless he or his representative is a party to the litigation.

A suit for taxes for one year is no bar to a suit for taxes for another year.

In order to work an estoppel, the operation of it must be mutual.

THIS was an action at law brought in the Circuit Court of Missouri for the county of Scotland, by the State, suing for the use of the collector of revenue for Scotland County, against the Keokuk and Western Railroad Company to charge the property then in its hands as owner with an alleged lien for state and county taxes levied on the property of the Missouri, Iowa and Nebraska Railway Company for the year 1886. The Keokuk and Western Railroad Company, defendant, became the purchaser of the property of the corporation against which the tax was levied, in December, 1886, through a sale thereof under a supplemental decree of foreclosure rendered July 8,

1886, and by other deeds of conveyance made by the Missouri, Iowa and Nebraska Railway Company, and by the Central Trust Company of New York.

The answer set forth the following facts in defence :

1. That the Alexandria and Bloomfield Railroad Company was chartered by special act of February 9, 1857, to build a railroad from Alexandria, Missouri, in the direction of Bloomfield in the State of Iowa, to the northern boundary of the State of Missouri. The act further provided that the construction of the road should be commenced within ten years after the passage of the act, and completed within ten years thereafter, and that "the stock of said company shall be exempt from taxation for a period of twenty years after its completion." By a subsequent act of February 19, 1866, the corporate name of such railroad company was changed to the Alexandria and Nebraska City Railroad Company. It appeared upon the trial that the road was completed to the state line in December, 1872.

2. March 2, 1869, the legislature passed a general law, authorizing any railroad company in Missouri to consolidate with a railroad company of an adjoining State, making one company of the two, "whose stock shall be so consolidated, under such terms and conditions and stipulations as may be mutually agreed between them, in accordance with the laws of the adjoining State in which the road is located, with which connection is thus formed." The fourth section of this act provided as follows : "Any such consolidated company shall be subject to all the liabilities, and bound by all the obligations of the company within this State, which may be thus consolidated with one in the adjacent State as fully as if such consolidation had not taken place, and shall be subject to the same duties and obligations to the State, and be entitled to the same franchises and privileges under the laws of this State, as if the consolidation had not taken place." Pursuant to this act, the Alexandria and Nebraska City Railroad Company, on May 3, 1870, consolidated with the Iowa Southern Railway Company, an Iowa corporation, under the name of the Missouri, Iowa and Nebraska Railway Company, forming a continuous

line from Alexandria, on the Mississippi, to a point in the State of Iowa near Nebraska City on the Missouri River.

3. Subsequently, and on August 19, 1886, the Missouri, Iowa and Nebraska Railway Company was sold under a decree of foreclosure entered in the Circuit Court of the United States for the Southern District of Iowa, to Morris K. Jesup and Henry C. Thatcher, who, subsequently, and in December of the same year, conveyed the same to the Keokuk and Western Railroad Company, defendant.

4. Defendant further set forth in its answer, by way of estoppel, that, in 1873, plaintiff brought suit against the Missouri, Iowa and Nebraska Company to recover the taxes for the year 1872, upon the property described in the petition in this action; that defendant answered, claiming the exemption provided by the ninth section of the original Alexandria and Bloomfield charter; that such suit was decided in favor of the railroad company, and affirmed upon appeal to the Supreme Court of Missouri, and reported in 65 Missouri, 123.

5. Defendant also pleaded by way of further estoppel that, in 1881, one Secor and other stockholders of the Missouri, Iowa and Nebraska Company filed a bill in the Circuit Court of the United States for the Eastern District of Missouri, praying an injunction against said company paying the taxes alleged to be due upon their property in Scotland, Clarke, and Schuyler Counties, and to enjoin the county court and the collectors of revenue from claiming such taxes for the year 1881, or any previous years; that a temporary injunction was granted which was made final and perpetual, and which is still in full force and effect; that in such suit complainant claimed the same exemption contained in the Alexandria and Bloomfield charter, which the court held to be valid; and that such case was reported in 9 Fed. Rep. 809, *Secor* v. *Singleton.*

It further appeared that a new constitution was adopted by the State of Missouri in 1865, which contained the following provisions:

" Art. 11, Sec. 3. All statute laws of this State now in force, not inconsistent with this constitution, shall continue in force

until they shall expire by their own limitation, or be amended or repealed by the general assembly. 2 Consts. & Char. 1154.

"Art. 11, Sec. 16. No property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this State, to counties, or to municipal corporations within this State," Ib. 1155.

Upon the hearing of this case, the Circuit Court of Scotland County denied the exemption claimed by the defendant, and rendered judgment against it for the taxes in question, which judgment was affirmed on appeal by the Supreme Court of the State, 99 Missouri, 30, whereupon, after an unsuccessful motion for a rehearing, defendant sued out this writ of error.

*Mr. F. T. Hughes* and *Mr. John F. Dillon,* (with whom was *Mr. Thomas De Witt Cuyler* on the brief,) for plaintiff in error.

*Mr. John C. Moore* and *Mr. F. L. Schofield* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court

The question in this case is whether the defendant, the Keokuk and Western Railroad Company, was entitled to the exemption of its property from taxation contained in the original charter to the Alexandria and Bloomfield Railroad Company, of which road it is the successor in interest.

(1) It will be observed that the constitutional provision upon which the State relies for the enforcement of this tax for the year 1886 was adopted in 1865, before the consolidation of the Alexandria and Bloomfield Company, under its changed name of the Alexandria and Nebraska City Railroad Company, with the Iowa Southern Company, which took place in 1870, and before the completion of the road in 1872. That the exemption from taxation contained in the original charter to the Alexandria and Bloomfield Company would have continued the full twenty years from the completion

of the road in 1872, had such consolidation not taken place, is, for the purpose of this case, conceded. Indeed, it was so held by the Supreme Court of the State, in *State* v. *Macon County*, 41 Missouri, 453. The court, construing sections 3 and 14 of article 11 of the constitution, held the provisions of section 14 to be a limitation upon the *future* power of the general assembly, and not intended to retroact so as to have any controlling application to laws in existence when the constitution was adopted. See also *State* v. *Cape Girardeau Railway*, 48 Missouri, 468; *State* v. *Coffee*, 59 Missouri, 59; *Atlantic &c. Railroad* v. *St. Louis*, 66 Missouri, 228.

The question then arises whether the Alexandria and Bloomfield Railroad Company, whose charter contained the exemption, is still in existence, or was dissolved by the consolidation, and a new corporation was thereby called into being, which held its property subject to the constitutional provisions of 1865, denying the power of the general assembly to exempt property from taxation. In the numerous cases which have arisen in this court as to the effect of a consolidation upon the existence and status of the constituent corporations, it has been held that the question of the dissolution of such corporations depended upon the language of the statute under which the consolidation took place — the presumption in each case being that each of the two lines of road will be held respectively to the privileges and burdens originally attaching thereto. *Tomlinson* v. *Branch*, 15 Wall. 460. If, upon the one hand, the identity of the prior corporations is preserved, an exemption from taxation, which one of them possessed, falls to that portion of the new corporation to which, under its former name, it had been attached. If, upon the other hand, the consolidation worked a dissolution of the prior corporations, their former privileges and franchises also ceased to exist. Thus, in the earliest of these cases, *Philadelphia &c. Railroad* v. *Maryland*, 10 How. 376, it was held that the Baltimore and Port Deposit Railroad Company, whose charter contained no exemption from taxation, did not acquire such exemption by consolidation with the Delaware and Maryland Railroad Company, whose charter exempted the road from taxation,

" except upon that portion of the permanent and fixed works which might be in the State of Maryland." A general rule was laid down in this case to which this court has steadily adhered, that the taxing power of the State should never be presumed to be relinquished, unless the intention to do so be declared in clear and unambiguous terms. This case was subsequently reaffirmed in the *Delaware Railroad Tax*, 18 Wall. 206.

In *Tomlinson* v. *Branch*, 15 Wall. 460, it was held that when a railroad company, to which, by its charter, an exemption from taxation was granted for a limited period, was by act of the legislature " merged " in another company, which thereby became invested with all its rights, property, and privileges, the exemption applied to the property with its limitation of time, and although the company in which it was merged had been granted a perpetual exemption from taxation in its charter, this perpetual exemption would not be extended to property so acquired, without express words, or necessary intendment to that effect. In *Central Railroad* v. *Georgia*, 92 U. S. 665, the act of the legislature authorized the Central Railroad and the Macon Railroad " to unite and consolidate " their " stocks " and all their " rights, privileges, immunities, property, and franchises " under the name and charter of the Central Railroad, in such manner that each owner of shares of stock of the Macon road should be entitled to receive an equal number of shares of the consolidated companies. It was held this consolidation was not a surrender of the existing charters of the two companies, and did not work the extinction of the Central Company, nor the creation of a new company, and also that the consolidated company continued to possess all the rights and immunities which were conferred upon each company by its original charter. The Central Company having been exempted from taxation beyond a limited amount by its original charter, it was held not to be within the power of the legislature to impose an increased tax after the consolidation was effected; but as the Macon Company had no provision in its charter limiting its liability to taxation, the power of the legislature remained

unimpaired to tax its franchises, property, and income after its consolidation with the Central.  It was said in the opinion of the court that " if in the statute there be no words of grant of corporate powers, it is difficult to see how a new corporation is created.  If it is, it must be by implication ; and it is an unbending rule that a grant of corporate existence is never implied."  It was held that the act did not work the dissolution of the existing corporations, and at the same time the creation of a new company, the court giving among other reasons that there was no provision for the surrender of the certificates of stock of the shareholders of the Central, and none for the issue of other certificates to them.  It will be observed in this case that the road whose charter contained the exemption from taxation was preserved intact by the consolidation ; and it was held that its exemption continued, while the other road was undoubtedly intended to go out of existence ; and as the Macon road held its property and franchise subject to taxation, the Central, succeeding to the franchises and property, held them alike subject.   Other cases to the same effect, and holding that the act of consolidation did not operate as a dissolution of the constituent companies, are *Chesapeake & Ohio Railroad* v. *Virginia,* 94 U. S. 718 ; *Green County* v. *Conness,* 109 U. S. 104 ; and *Tennessee* v. *Whitworth,* 117 U. S. 139.

Upon the other hand, we have held that the consolidation acts of Ohio and Maine worked a dissolution of the constituent companies and the incorporation of a new company, and that such company was subject to intermediate acts declaring the charters of corporations subject to be altered, amended, or repealed by the legislature.   *Shields* v. *Ohio,* 95 U. S. 319 ; *Railroad Company* v. *Maine,* 96 U. S. 499.   A leading case is that of *Railroad Company* v. *Georgia,* 98 U. S. 359, 362, wherein two railroad companies, each of which enjoyed by its charter a limited exemption from taxation, were consolidated by an act of the legislature passed April 18, 1863, which authorized a consolidation of their stocks, conferred upon the consolidated companies full corporate powers, and continued to it the franchises, privileges, and immunities which the com-

panies had held by their original charters. It was held that by the consolidation the original companies were dissolved and a new corporation created, which became subject to the provisions of a statutory code, adopted January 1, 1863, permitting the charters of private corporations to be changed, modified, or destroyed at the will of the legislature. It was further held that a subsequent legislative act taxing the property of such new corporation as other property in the State was taxed was not a law impairing the obligation of a contract. It was said that the consolidation provided for was not a merger of one company into another, and the case of *Railroad Company* v. *Georgia*, 92 U. S. 665, was distinguished from it in this particular. "Nor was it," says Mr. Justice Strong, "a mere alliance or confederation of the two. If it had been, each would have preserved its separate existence as well as its corporate name. But the act authorized the consolidation of the stocks of the two companies, thus making one capital in place of two. It contemplated, therefore, that the separate capital of each company should go out of existence as the capital of that company." In *St. Louis, Iron Mountain &c. Railway* v. *Berry*, 113 U. S. 465, a like effect was given to the consolidation of two roads by an agreement which provided that all the property of each company should be taken and deemed to be transferred to the consolidated company "as such new corporation without further act or deed." It was held that this created a new corporation, with an existence dating from the time the consolidation took effect, and that it was subject to constitutional provisions with reference to taxation in force at that time. See also *McMahan* v. *Morrison*, 16 Indiana, 172.

Looking at the act in question in this case, we find that, by section 1, any Missouri railroad company whose tracks should connect with the road of an adjoining State was authorized to make and enter into an agreement with such connecting company for the consolidation of the stock of the respective companies whose tracks should be so connected, *making one company of the two*, whose stock should be so consolidated upon such terms, conditions, and stipulations as might be

mutually agreed between them; that, by section 2, "such consolidation shall not be made, unless the terms and provisions thereof shall be approved by a majority of the stock, or the holders of a majority of the capital stock in each of said companies whose stock shall be consolidated;" that, by section 3, the board of directors were authorized to adopt by resolution a new corporate name for the consolidated company, and call in the certificates of stock then outstanding in each company, and exchange them for stock in the new company; and providing that a copy of the consolidation agreement, and the name adopted for the new company, "shall be filed with the Secretary of State, and shall be conclusive evidence of such consolidation, and of the corporate name of the consolidated company." It is difficult to see how the legislature could provide more clearly for the extinguishment of the prior companies, and the formation of a new one, than by providing that the two companies shall become one; that new certificates of stock shall be issued in exchange for the stock of the constituent companies; and that the consolidation agreement shall be recorded with the Secretary of State as the charter of a new company. In our opinion this was the effect of the act in question.

It is impossible to conceive of a corporation existing without stock, or certificates representing the interests of the corporators in the organization. Now, if the act provides that these certificates shall be surrendered, and certificates in another company issued in their place, what becomes of the prior companies? Who are their stockholders — who their officers? If the stock in the new company is sold, what interest in the prior companies passes by the sale? There can be but one answer to these questions. The property and franchises of the prior companies are gone as much as if they had formally surrendered their charters. The new company may doubtless receive by transmission from its constituent companies their property, rights, privileges, and franchises, including any immunity from taxation; but it receives them as an heir receives the estate of his ancestor, or as a grantee receives the estate of his grantor, by inheritance, succession, or

purchase. The result is not a mere union or partnership of two companies, nor the merger of the franchises of one in another, but the extinguishment of one and the creation of another in its place. Speaking of a similar act of Ohio, which declared that the consolidated companies "shall be deemed and taken to be one corporation, possessing within the State all the rights, privileges, and franchises, and subject to all the restrictions, liabilities, and duties of such corporations of this State so consolidated," Mr. Justice Swayne observed in *Shields* v. *Ohio,* 95 U. S. 319, 322, 323: "It [the consolidation] could not occur without their consent. The consolidated company had then no existence. It could have none while the original corporations subsisted. All — the old and the new — could not coexist. It was a condition precedent to the existence of the new corporation that the old ones should first surrender their vitality and submit to dissolution. This being done, *eo instanti* the new corporation came into existence."

It follows from this that, when the new corporation came into existence, it came precisely as if it had been organized under a charter granted at the date of the consolidation, and subject to the constitutional provisions then existing, which required (art. 11, sec. 16) that no property, real or personal, should be exempted from taxation, except such as was used exclusively for public purposes; in other words, that the exemption from taxation contained in section 9 of the original charter of the Alexandria and Bloomfield Railway Company did not pass to the Missouri, Iowa and Nebraska Company. As was said of an Arkansas corporation in *St. Louis, Iron Mountain &c. Railway* v. *Berry,* 113 U. S. 465, 475, "it came into existence as a corporation of the State of Arkansas, in pursuance of its constitution and laws, and subject in all respects to their restrictions and limitations. Among these was that one which declared that 'the property of corporations, now existing, or hereafter created, shall forever be subject to taxation the same as property of individuals.' This rendered it impossible in law for the consolidated corporation to receive by transfer from the Cairo and Fulton Railroad Company, or otherwise, the exemption sought to be enforced

in this suit." See also *Memphis & Little Rock Railroad* v. *Commissioners*, 112 U. S. 609; *Shields* v. *Ohio*, 95 U. S. 319; *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244.

Nor was the exemption saved by section 3 of article 11, providing that "all statute laws of this State now in force, not inconsistent with this constitution, shall continue in force until they shall expire by their own limitation, or be amended or repealed by the general assembly." This referred to statutes in force at the time the constitution was adopted, the operation of which is continued, notwithstanding the constitution. In this case, however, the exemption contained in section 9 of the charter of the Alexandria and Bloomfield Railway Company ceased to exist, not by the operation of the constitution, but by the dissolution of the corporation to which it was attached.

It is further insisted, however, that, under section 4 of the act of March 2, 1869, there was a further provision that the consolidated company should be "subject to all the liabilities, and bound by all the obligations of the company within this State," and "be entitled to the same franchises and privileges under the laws of this State, as if the consolidation had not taken place." Whether, under the name "franchises and privileges," an immunity from taxation would pass to the new company may admit of some doubt, in view of the decisions of this court, which, upon this point, are not easy to be reconciled. In the *Chesapeake & Ohio Railway* v. *Miller*, 114 U. S. 176, it was held that an immunity from taxation enjoyed by the Covington and Ohio Railway Company did not pass to a purchaser of such road under foreclosure of a mortgage, although the act provided that "said purchaser shall forthwith be a corporation," and "shall succeed to all such franchises, rights, and privileges . . . as would have been had . . . by the first company but for such sale and conveyance." It was held, following in this particular *Morgan* v. *Louisiana*, 93 U. S. 217, that the words "franchises, rights, and privileges" did not necessarily embrace a grant of an exemption or immunity. See also *Picard* v. *Tennessee &c. Railroad*, 130 U. S. 637. Upon the other hand, it was held in *Tennessee* v.

*Whitworth*, 117 U. S. 139, that the right to have shares in its capital stock exempted from taxation within the State is conferred upon a railroad corporation by state statutes granting to it "all the rights, powers, and privileges" conferred upon another corporation named, if the latter corporation possesses by law such right of exemption, citing in support of this principle a number of prior cases. See also *Wilmington & Weldon Railroad* v. *Alsbrook*, 146 U. S. 279, 297.

But the decisive answer to this objection is that the legislature had no power, in 1869, to extend to a new corporation created by the consolidation an exemption contained in an act passed in 1857, before the constitution was adopted, and hence that, under the terms of this act, we cannot hold that immunity from taxation passed as a franchise or privilege to the consolidated corporation. The construction claimed by the defendant would be directly in the teeth of the constitutional provision that no property shall be exempted from taxation. While, as heretofore observed, an exemption from taxation contained in a charter previously granted could not be taken away by this constitutional provision without the impairment of the obligation of a contract, it doubtless applies to all corporations thereafter formed either by original charter or by the consolidation of prior corporations under the act of 1869.

(2) The question of estoppel remains to be considered. In 1873, the county of Scotland brought suit in the Circuit Court of Scotland County against the Missouri, Iowa and Nebraska Railway Company to recover the taxes of 1872 upon the property in question in this case, and was defeated, the court holding it to be exempt under section 9 of the charter of the Alexandria and Bloomfield Railway Company. It was conceded in that case that the Missouri, Iowa and Nebraska Railway Company had succeeded to all the privileges and liabilities of the Alexandria and Bloomfield Company. It appeared that in the seventh section of a general act concerning corporations, which act antedated the charter of the Alexandria and Bloomfield Railroad Company, it had been declared that "the charter of every corporation that shall hereafter be granted by the legislature, shall be subject to alteration, suspension,

and repeal, in the discretion of the legislature; " and that on March 10, 1871, long subsequent to the charter of the Alexandria and Bloomfield road, the legislature had passed an act providing for the uniform assessment and collection of taxes upon railroad companies. On appeal to the Supreme Court of Missouri, that court held that the object of the general corporation laws of 1845 and 1855 was to confer certain powers and privileges and impose certain duties and liabilities, in the absence of any stipulations or provisions inconsistent with those contained in special charters subsequently granted; that, if there were any inconsistencies in the charter of 1857 with such act, it must be understood that the restrictions of this act were intended to be removed, for reasons satisfactory to the legislature — in other words, that one legislature could not bind its successors, and, if the legislature of 1857 thought proper to disregard the provisions of the general act concerning corporations, there was no principle upon which such power could be questioned. It followed from this that the exemption from taxation contained in the charter of 1857 was valid, and was a grant which could not be taken away by the act of 1871, subjecting all railways to the payment of taxes. The question upon which the case now under consideration was subsequently decided, namely, that the Missouri, Iowa and Nebraska Railway Company did not succeed to the exemption from taxation provided in the original charter of the Alexandria and Bloomfield Company, was not discussed in that case, since the exemption was conceded to inure to the latter company.

To the argument that this judgment constitutes an estoppel there are two answers:

*First.* There was no such privity of estate between the defendant in the suit, namely, the Missouri, Iowa and Nebraska Company, and the defendant in this suit as makes the judgment in that case *res judicata* in this. The mortgage of the Missouri, Iowa and Nebraska Railway Company, under the foreclosure of which this defendant purchased this road, was executed June 1, 1870, and neither the trustee under that mortgage, the Farmers' Loan and Trust Company, nor the bond-

holders, whom this mortgage secured, were parties to that action, which was begun in 1873 to recover the taxes of 1872. While a mortgagee is privy in estate with a mortgagor as to actions begun before the mortgage was given, he is not bound by judgments or decrees against the mortgagor in suits begun by third parties subsequent to the execution of the mortgage, unless he or some one authorized to represent him, like the trustee of a mortgage bondholder, is made party to the litigation, although it would be otherwise if the mortgage were executed pending the suit or after the decree. A leading case on this point is *Campbell* v. *Hall*, 16 N. Y. 575, in which it was held that a second mortgagee of land was not estopped by a judgment in an action between his mortgagor and a prior mortgagee, rendered after the execution of the second mortgage, but might litigate the amount due upon the first mortgage, notwithstanding the judgment. Speaking of the rule that a grantee is estopped by a judgment against his grantor, because he holds by a derivative title from his grantor, and cannot, therefore, be in a better situation than the party from whom he obtained his right, the court observed : " This being the reason for the rule, it follows that it can have no application except where the conveyance is made after the event out of which the estoppel arises. The principle in such cases is that the estoppel attaches itself to and runs with the land. The grantor can transfer no greater right than he himself has, and hence the title which he conveys must necessarily be subject, in the hands of the grantee, to all the burdens which rested upon it at the time of the transfer. On the other hand, nothing which the grantor can do or suffer to be done after such transfer can affect the rights previously vested in the grantee." See also *Mathes* v. *Cover*, 43 Iowa, 512 ; *Bryan* v. *Malloy*, 90 N. C. 508 ; *Scates* v. *King*, 110 Illinois, 456 ; *Dooley* v. *Potter*, 140 Mass. 49 ; *Coles* v. *Allen*, 64 Alabama, 98 ; *Todd* v. *Flournoy*, 56 Alabama, 99 ; *Shay* v. *McNamara*, 54 California, 169.

*Second.* A suit for taxes for one year is no bar to a suit for taxes for another year. The two suits are for distinct and separate causes of action. If there were any distinct question litigated and settled in the prior suit, the decision of the court

upon that question might raise an estoppel in another suit upon the principle stated in *Cromwell* v. *County of Sac*, 94 U. S. 351. But, as was held in that case, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. This was an action upon certain bonds and coupons issued by the county of Sac. Defendant pleaded a judgment rendered in favor of the county in a prior action brought by one Smith upon earlier coupons upon the same bonds, accompanied by proof that the plaintiff Cromwell was at the time the owner of the coupons in that action, and that the suit was prosecuted for his sole use and benefit. The court held that there was a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. It was said that " it is not believed there are any cases going to the extent that because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions." The same principle was reaffirmed in *Nesbit* v. *Riverside Independent District*, 144 U. S. 610, and *Wilmington & Weldon Railroad* v. *Alsbrook*, 146 U. S. 279, 302. In the case of *Davenport* v. *Chicago, Rock Island &c. Railway*, 38 Iowa, 633, 640, the Supreme Court of Iowa held that a decree in favor of a railway company in a suit for taxes for a prior year would not estop the State from collecting the taxes for a subsequent year, each year's taxes constituting a distinct and separate cause of action. " The cases," said the court, " are unlike those where two causes of action, (as two promissory notes,) forming the subject-matter of successive actions between the same parties, *both growing out of the same transaction*, in which a defence set up in the first suit, and held good, will

conclude the parties in the second. . . . Taxes of separate years do not in any just sense grow out of the same transaction. They are like distinct claims on two promissory notes made upon two distinct and separate, though similar, transactions between the same parties. A judgment on one of such notes, it is quite clear, would not be of any force as an estoppel in an action on the other note between the same parties." It could never be tolerated that the State should be forever barred in its collection of taxes by an erroneous decision.

Nor did the judgment in that case establish a rule of property upon which the plaintiff was entitled to rely, and upon the faith of which it claims to have purchased the road, inasmuch as it appears that the point upon which this case turns, namely, the right of the Missouri, Iowa and Nebraska Railway Company to the exemption in the original charter was conceded in that case, and the only rule of property established was that the Alexandria and Bloomfield Company was entitled to such exemption, notwithstanding the general act concerning corporations enacted prior thereto, which declared that the charter of every corporation should be subject to alteration or repeal, and the act of March 10, 1871, which provided a general law for the collection of taxes from railway companies. This, if anything, was the rule of property declared in that case; and as this rule is not relied upon in this case, and the tax is defended upon a ground not put in issue there, but conceded by counsel in favor of the company, it is difficult to see how that case can be regarded as establishing any rule of property of which the defendant can avail itself in this action.

(3) What is known as the Secor decree was obtained in a suit brought by Secor and other stockholders of the Missouri, Iowa and Nebraska Railway against the company itself, and also against the county court and officers of certain counties to enjoin the collection of taxes for 1881, or any previous years. The case was decided upon the authority of the above case of *Scotland County* v. *Railroad Co.*, 65 Missouri, 123, and an injunction granted in pursuance of the prayer of the bill. In addition to the fact above stated

that a suit for taxes for one year is not an estoppel to a suit for taxes for a different year, there is the same absence of that privity of estate so indispensable to an effective estoppel, which we hold to be fatal in respect to the judgment in the state court. If the plaintiff herein, the Keokuk and Western Railroad Company, would not have been affected by an adverse decree in the Secor suit, it cannot take advantage of the same by way of estoppel. The operation of an estoppel must be mutual.

There was no error in the judgment of the Supreme Court of Missouri, and it is therefore

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE BREWER dissented.