## DURHAM MERCHANT'S ASS'N v. UNITED STATES.

District Court, M. D. North Carolina, Durham Division.

Aug. 9, 1940.

Albert W. Kennon, Jr., of Durham, N. C., for plaintiff.

Carlisle W. Higgins, U. S. Atty., and Bryce R. Holt, Asst. U. S. Atty., both of Greensboro, N. C., for defendant.

HAYES, District Judge.

The sole question presented in this case is whether the taxpayer is exempt from income taxes as a "business league" within the meaning of Section 103(7) of the Revenue Act of 1932 and succeeding Revenue Acts, 26 U.S.C.A. Int.Rev.Code, § 101(7), and the Regulations applicable thereto.[1]

■ The plaintiff claims it is exempted as a business league, while the Commissioner determined that it was not a business league, and that its income was taxable. The plaintiff has failed to sustain its burden of proof. Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184.

■ The courts adhere to a strict construction of an exemption statute. Tennessee v. Whitworth, 117 U.S. 139, 6 S.Ct. 649, 29 L.Ed. 833; Yazoo & M. V. Railroad Co. v. Thomas, 132 U.S. 174, 10 S.Ct. 68, 33 L.Ed. 302.

■ The statute exempting business leagues from taxation has been re-enacted in the same terms in successive revenue acts since 1913.[2]

Identical provisions of the applicable regulations were promulgated under all of the revenue acts since that of 1928.[3] The administrative interpretation placed upon the term "business league" has remained the same over many years and Congress, by re-enacting the provision without change, has ratified that interpretation, Uniform Printing & Supply Co. v. Commissioner, 7 Cir., 33 F.2d 445.

It is entitled to great weight and should not be disturbed. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101; United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500. Under the regulation a "business league" must not engage in a regular business of a kind ordinarily carried on for a profit; its activities must not be directed to the performance of particular services for individual persons; it must not engage in a regular business of a kind ordinarily carried on for a profit, even though carried on by cooperation or produces sufficient income to be self-sustaining.

■ Measured by these tests, plaintiff fails to come within the orbit of a business league. It is not similar to a chamber of

[1] a. Revenue Act of 1932, c. 209, 47 Stat. 169, "Sec. 103 [§ 101]. Exemptions from tax on corporations. The following organizations shall be exempt from taxation under this title [chapter] * * * Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

b. Treasury Regulations, 77, promulgated under the Revenue Act of 1932:

Article 528: Business leagues, chambers of commerce, real estate boards, and boards of trade. A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for a profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in regular business of a kind ordinarily carried on for a profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors, to make sound investments, is not a business league, since its activities do not further any common business interest even though all of its income is devoted to the purpose stated. A stock exchange is not a business league, a chamber of commerce or a board of trade within the meaning of the law and is not exempt from tax.

[2] 1938, 1936, 1934 Acts, Sec. 101(7), 26 U.S.C.A.Int.Rev.Code, § 101(7); 1932, 1928 Acts, Sec. 103(7), 26 U.S.C.A.Int.Rev.Code, § 101(7); 1926, 1924, 1921 and 1918 Acts, Sec. 231(7), 44 Stat. 39, 43 Stat. 285, 42 Stat. 253, 40 Stat. 1076; 1916 Act, Sec. 11(a), Seventh, 39 Stat. 766; 1913 Act, Sec. IIG(a), 38 Stat. 172.

[3] Regulations 74, Art. 528; Regulations 69, 65, 62, 45, Art. 518; Regulations 33, Art. 67.

commerce or board of trade. In the particulars here involved, its main functions are to collect debts for its members and to make credit reports for hire. The business of collecting and credit reporting are both primarily for profit and they are almost exclusively carried on for profit. By this association its members serve its members more profitably in a two-fold capacity. It virtually determines who is worthy of credit and, possessing this advantage, can coerce payment of bills or the customer faces the loss of credit standing. It is, in the nature of the case, an effective collective agency and credit reporting corporation from both of which sources it derives, profit and is primarily engaged for profit. It falls under the standard established in Produce Exchange Stock Clearing Association v. Helvering, 2 Cir., 71 F.2d 142.

The plaintiff employs five persons. Four of them devote all of their time to credit reporting and the fifth spends about 60% of her time in the same thing. For each of the years in question an average of 30,000 oral credit reports were made and thousands of written reports resulting in profits to the taxpayer for the years 1931 to 1937. In 1937, out of an expenditure of $10,057.97, not more than $1,500 could be traced to non-profit activities. The facts here clearly establish plaintiff as a business enterprise for profit, and not a business league. Adjustment Bureau of St. Louis Credit Association v. Commissioner, 21 B. T.A. 232. See Ft. Worth Grain and Cotton Exchange v. Commissioner, 27 B.T.A. 983; Louisville Credit Men's Adjustment Bureau v. United States, D.C., W.D. Ky., 6 F.Supp. 196.

■ It is true that the plaintiff was engaged in the enhancement of business conditions and trade; that its president and vice-president serve without salary; it cooperates in civic events; expends money for Christmas decorations; it holds general trade expansion events; and "pay-up campaigns." Notwithstanding these attributes of a board of trade, the plaintiff is not primarily existing for these purposes; its chief purpose is to promote the welfare of its merchant members by furnishing them credit reports for hire but cheaper than to non-members and to collect their accounts. Dues are paid on the basis of entitling the member to a given number of reports in exchange for his dues and the reports in all instances, are supplied for pay—a designated fee or in membership dues. The member or shareholder thus receives pecuniary benefits therefrom by virtue of his membership, in that he gets what he would have to buy elsewhere. The plaintiff thus operates for profit. Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880.

■ It cannot be successfully maintained that this is a company whose net earnings do not inure to the benefit of private individuals because it has no capital stock and no stockholders. Undoubtedly the growth and success of the enterprise render its usefulness greater to each of its membership. If its profits are used to expand and enlarge its activities, its members profit thereby, and this increased service and activity inures to the profit of its members. Boston Terminal Co. v. Gill, 1 Cir., 246 F. 664; Houston Belt & Terminal R. Co. v. United States, 5 Cir., 250 F. 1, 4. See Retailers Credit Association v. Commissioner, 9 Cir., 90 F.2d 47, 111 A.L.R. 152.