## APARTMENT OPERATIONS ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10203.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1943.

Edwards Merges, Josiah Thomas, and Clarence L. Gere, all of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Irving I. Axelrod, and Helen Goodner, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The question presented by this petition for review is whether, during the taxable year 1938, the petitioner was a business league within the provisions of § 101(7) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 101(7), exempting from income tax "business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *."

Petitioner was originally formed as a voluntary association of apartment owners. In 1937 it was incorporated under a statute of the State of Washington relating to nonprofit corporations. Its membership is limited to owners of three or more rental units of a certain classification in King County, Washington. It has no capital stock and pays no dividends.

As stated in its articles, the objects and purposes for which the petitioner was formed are as follows:

(a) To provide a mutual benefit organization not operated for profit, for the purpose of gathering and distributing facts, data, and information relative to the ownership, operation, and general conduct of apartment houses and the apartment house business in general, for the use and benefit of its members and for public dissemination.

(b) To provide a meeting place, office and other facilities which are deemed necessary or desirable in the handling of its affairs and for use and benefit of its members.

(c) To handle goods, wares and merchandise required by its members, and to render service and counsel, and assistance to its members, and generally to assist them in control of their financial and economic interests and stabilization of the industry.

(d) To own, operate, publish, manage and distribute any publication deemed advisable, and particularly the magazine known as the "Apartment Journal", in accordance with the law governing such publications, and in connection therewith to employ agents to conduct and handle the same, sell advertising space therein, and do all things deemed necessary or expedient in connection therewith.

(e) To encourage and assist in the organization of apartment house owners and operators in the State of Washington.

In practice the petitioner performed substantially all of these functions. The Board of Tax Appeals found that it acted as a clearing house for information about tenants, about the operation of apartment houses, and about legislation affecting the business; gave counsel and advice to its members and did what it could to promote their welfare; printed specially designed forms such as rent receipts and rental agreements and sold them to members at cost, plus a small margin; secured information about prices and bought articles such as electric light bulbs and other electrical equipment in larger quantities and at lower unit prices than the members would ordinarily pay, and sold them to the members at prices slightly above cost; published a journal and distributed it among its members, the Journal carrying advertising matter of apartment supply houses and public service companies; and that it represented its members in labor disputes and negotiations.

Petitioner has no purpose of making a profit, but tries to have a small surplus to assure its continuance. It maintains a general fund comprised of dues plus sales and advertising receipts, out of which it pays its expenses. In 1938 this fund grew and then remained stationary. In that year petitioner's gross receipts were $10,814.17, more than half of which was made up of dues. Of the gross receipts the Journal contributed $2,519.09 and merchandise sales $1,352.08. Expenses were $9,873.08, consisting of general expense of about $3,600, Journal about $4,600, and merchandise purchases and expenses of about $1,600. From its survey of these activities the Board thought that petitioner is "a cooperative buying organization," withholding a small margin of profit, and that it is not a business league within the intendment of the statute.

We see no sufficient reason for disturbing the Board's determination. Article 101(7)-1 of Treasury Regulations 101, promulgated under the applicable Revenue Act, is as follows: "A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league."

 These regulatory provisions were early adopted. They have remained substantially unchanged through repeated reenactments of the pertinent statute and have thus become essentially a part of it. Retailers Credit Ass'n v. Commissioner, 9 Cir., 90 F.2d 47, 50, 111 A.L.R. 152. Subjected to the test of the regulations, petitioner does not appear to answer the description of a business league. It regularly carries on business of a kind ordinarily conducted for profit. It performs particular services for individual persons, as witness the furnishing of credit information, the supplying of an apartment shopping service, the making of arrangements for direct purchases by members at discount, and similar activities. Retailers Credit Ass'n v. Commissioner, supra. Compare Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 55 S.Ct. 285, 80 L.Ed. 278. There is no showing that the business done or the activities described were mere incidents in a broad civic or eleemosynary program. Compare Trinidad v. Sagrada Orden, 263 U.S. 578, 582, 44 S.Ct. 204, 68 L.Ed. 458. On the contrary, these functions appear to be predominant.

The decisions uniformly sustain the interpretation given the Act by the quoted regulations. Retailers Credit Ass'n v. Commissioner, supra; Northwestern Municipal Ass'n v. United States, 8 Cir., 99 F.2d 460; Uniform Printing & Supply Co. v. Commissioner, 7 Cir., 33 F.2d 445, certiorari de-

nied Uniform Printing & Supply Co. v. Lucas, 280 U.S. 591, 50 S.Ct. 38, 74 L.Ed. 639; Produce Exchange Stock Clearing Ass'n v. Helvering, 2 Cir., 71 F.2d 142; Park West-Riverside Associates, Inc., v. Commissioner, 2 Cir., 110 F.2d 1022, affirming per curiam unreported memorandum opinion of the Board of Tax Appeals dated June 2, 1939; Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880; Durham Merchant's Ass'n v. United States, D.C.N.C., 34 F.Supp. 71.

The judgment of the Board of Tax Appeals is affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.