# THE BALTIMORE, CHEASPEAKE & ATLANTIC RAILWAY COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF OCEAN CITY.

*Exemption of Railway from Taxation—Subsequent Consolidation with Other Roads—Sale Under Foreclosure of Railway Entitled to Exemption from Taxation.*

The Act of 1886, ch. 133 exempted from taxation for thirty years the property and stock of the B. & E. S. R. Co. which extended from Eastern Bay to Salisbury.    That company was also authorized by the Act to lease or purchase other railroads.    Subsequently the company purchased a road extending from Salisbury to Ocean City, which road possessed no exemption from taxation.    *Held*, that the exemption given to the B. & E. S. Co. did not extend to the road subsequently purchased and consolidated with the former.

When a railway company is entitled to a statutory exemption from taxation, this privilege does not pass to another company which purchases the road under a judicial sale.

Code, Art. 23, sec. 188, provides that when any railroad shall be sold under foreclosure, &c , the purchasers may form a corporation for the purpose of operating the road and such corporation shall possess all the powers, rights, immunities, privileges and franchises in respect to such road which were possessed previously to the sale. *Held*, that a special exemption from taxation possessed by a company whose road is sold under mortgage foreclosure proceedings does not pass to the new corporation formed by the purchaser to operate the road, since the statute does not expressly declare that the purchasers shall possess such immunity.

Appeal from a judgment of the Circuit Court for Worcester County (HOLLAND and LLOYD, JJ.)

The cause was argued before MCSHERRY, C. J., BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*Nicholas P. Bond* and *Robert P. Graham*, for the appellants.

The language of the Code is so plain in providing that a corporation formed for the purpose of " owning, maintaining and operating a railroad purchased at foreclosure sale shall possess all the powers, rights, *immunities*, privileges and franchises in respect to such railroad   *   *   *   and in respect to the real and personal property appertaining to the same, which were possessed or enjoyed by the corporation which owned or held such railroad previous to such sale, under or by virtue of its charter and any amendments thereto," that there is no room for discussion.    If authority be needed, however, it will be found expressly decided by the Supreme Court in *Tennessee* v. *Whitworth*, 117 U. S. 145 ; *Phœnix Fire Co.* v. *Tennessee*, 161 U. S. 174.

The next question is whether the property in question was exempt in the hands of the Baltimore and Eastern Shore Railroad.    We do not see much room for discussion as to this point.    There can be no question as to the power of the Baltimore and Eastern Shore Railroad to purchase the property.    Section 5 of the Act of 1886, amending its charter, provided that it should have power to purchase and operate any other railroad, and any other railroad should have

the right to sell its property to the Baltimore and Eastern Shore Railroad. It is plain, therefore, that the Legislature not only contemplated, but expressly authorized the purchase of the property owned by another railroad. Can it be questioned that, when such a purchase was made, the property bought became the property of the Baltimore and Eastern Shore Railroad Company?

But the Legislature also provided by the same Act that " all of the property, franchises, shares of capital stock and bonds " of the company should be exempt from all State, county and municipal taxation for the term of thirty years, accounting from the date of the completion of said road between the termini mentioned in its charter. The term " property " used in this section includes necessarily anything which the charter of the company enabled it to purchase or otherwise to become possessed of.

It is also to be noted that the power to acquire this property was conferred on the company by the same Act of Assembly which granted to it the exemption, and that the wording of the exemption is so broad as to show the evident design of the Legislature to include all things on which the company could be taxed, so as to prevent the controversies which have arisen over the construction of tax exemption in charters. The language used here expressly includes not only the shares of stock, the exemption of which by the settled doctrine in this State is held to prevent the taxation of the franchises and property as such, but expressly includes "all property, franchises and bonds." If it had merely included stock, we submit that under the decision in *State* v. *B. & O. R. R.* 48 Md. 78, the property which the company was authorized to acquire and the franchises granted by the Act granting the exemption would have been exempt. *A fortiori* are such property and franchises exempt when specifically mentioned in the Act.

An examination of the cases on the subject shows that they may be divided into two classes—one in which the language of the Legislature leaves it in doubt as to whether

it was intended to exempt the property by exempting the stock, and another in which it is doubtful whether property acquired under authority granted subsequent to the granting of the exemption is included in it. That distinction was taken by this Court in the case of *State* v. *B. & O.*, above cited. There is no case wherein an exemption so broad and evidently intended to include all possessions of the company is denied its manifest meaning.

It is, of course, almost impossible to find any case where a statute using language precisely similar to the one under consideration has been construed by this Court. The following cases, however, are cases where the Courts have considered various statutes granting exemptions. *Wilmington R. R.* v. *Reid*, 13 Wall. 267 ; *C. & O. R. R.* v. *Miller*, 114 U. S. 176 ; *Morgan* v. *Louisiana*, 93 U. S. 217 ; *Keokuk R. R.* v. *Missouri*, 152 U. S. 301.

An attempt is made to construe the latter part of section 2 of the Act of 1896 into a limitation of the property included in the exemption, instead of a provision merely fixing the time when such exemption should begin. To give the language used such an effect would be to wrest it from its evident and simple meaning into something entirely foreign. It was the evident purpose of the Legislature to ensure the completion of the road by making its bounty, given in the shape of an exemption, dependent upon such completion, and therefore it made the period of such exemption date from the time of completion. The provision is capable of no other interpretation without doing violence to the language used.

*James E. Ellegood* (with whom were *Geo. W. Purnell* and *O. D. Collins*, on the brief), for the appellee.

It is manifest that the Legislature intended to exempt only such property as the corporation might acquire under section 1 of the Act of 1886. This section defines the termini of the road, and describes the property it may acquire in connection with the road ; and then follows imme-

diately the exemption of its "franchises, property, etc." The powers given by sections 4 and 5 are not essential to the exercise of those of section 1, but are supplemental thereto and separable and divisible therefrom. The company found it expedient to buy the Wicomico and Pocomoke Railroad Company; but suppose it finds it expedient to buy all the other railroads on the Eastern and Western Shore and " steamboats and barges to ply in connection therewith" and "to buy and improve lands for pleasure resorts;" in short, buy and build towns and cities as pleasure resorts, can we suppose the Court would construe all this "property" as within the scope of section 2. We therefore submit that this immunity extends only to such property as is reasonably necessary for the operation of its railroad from Eastern Bay to Salisbury, and should not be stretched to include all it may see proper to buy and consolidate with it under sections 4 and 5. *State* v. *B. & O. R. R. Co.*, 48 Md. 70; 25 *Amer. & Eng. Ency. of Law*, 170, and cases cited.

The consolidation of the two companies conferred no other rights and privileges than each possessed before. Section 4, chapter 133 of Act 1886, which authorizes the consolidation, declares: " The respective companies may thereafter constitute one company and be entitled to all the property, franchises, rights, privileges and immunities which each of them possess, have and enjoy under and by virtue of their respective charters."

But the appellant contends that it has all the rights and privileges of the Wicomico and Pocomoke Railroad Company without its burdens and duties. The fourth paragraph of the agreed statement shows that the latter company was bought by the Baltimore and Eastern Shore Railroad Company and " *consolidated therewith.*" The authorities establish this doctrine, that when two companies consolidate and one is entitled by its charter to hold its property exempt from taxation, that property remains exempt from taxation after the consolidation, but the exemption does not extend to any

other property acquired by the consolidated company, either at the time of the consolidation or afterwards.    *State* v. *P. W. & B. R. R. Co.*, 2 Gill, 355 ; *State* v. *P. W. & B. R. R. Co.*, 45 Md. 361 ; *C. & O. R. R. Co.* v. *Virginia*, 94 U. S. 718 ; *Cen. R. R. Co.* v. *Georgia*, 92 U. S. 665 ; *Southwestern R. R. Co.* v. *Wright*, 116 U. S. 231 ; *Tomlinson* v. *Branch*, 15 Wall. 460 ; *American and English Enc. Law*, vol. 25, p. 174 ; *Cooke on Stocks and Stockholders*, sec. 572 ; *Desty on Taxation*, vol. 1, p. 166 ; *Missouri* v. *K. & W. R. R. Co.*, 6 Lawyers' Reports Annotated, 222.

"The franchises of a railroad are positive rights or privileges without the possession of which the road of the company could not be successfully worked.    Immunity from taxation is not one of them.    The former may be conveyed to a purchaser of the road as a part of the property of the company ; the latter is personal and incapable of transfer without express statutory direction."    *Morgan* v. *State Louisiana*, 93 U. S. 217.

We find no such "express statutory direction" exempting the appellant.    Exemption from taxation is not a property right, like the franchise and tangible property of a corporation, and does not inhere in the property ; it is a mere personal favor given by the State and is in its nature incapable of sale and alienation.    It is no part of the powers and privileges.    The same question was decided in *C. & O. R. R. Co.* v. *Miller*, 114 U. S. 176, in which the Court said "the property to be exempt is the property of that company and of no other and while it continues to be the property of that company and no longer."    In note to the above case (Lawyers' Edition), referring to *Morawetz on Corporations*, sec. 924, it is said "no presumption can be made in favor of the existence of power to delegate or mortgage those franchises which do not pertain to the use of particular property.    A grant of authority to a railroad company to mortgage its property and franchises, would refer only to such franchises as pertain to the use of the railroad ; it would not enable the company to mortgage the franchise of being exempt

from taxation in connection with its tangible property."
*Memphis R. R. Co.* v. *Berry*, 112 U. S. S. Ct. 609. " If
the franchises and property of a corporation be transferred
by a sale in foreclosure, an exemption from taxation does
not accompany the transfer. The exemption is a personal
privilege and not a franchise." *Cooke on Stock and Stock-holders*, sec. 572 C. (2nd ed.) If it were not for the
authority given by the statute this corporation could not
mortgage its franchises. *Carpenter* v. *Blk. Hawk Mining
Co.,* 65 N. Y. 49.

Exemption from taxation is not a contract, but is a mere
gratuity, without consideration, and the narrowest and
strictest construction must be given it. *Tucker* v. *Ferguson,*
89 U. S. 529; *L. and N. R. R. Co.* v. *Palmer,* 109 U. S.
224; *Wilson* v. *Gaines,* 103 U. S. 417; *Picard* v. *E. Tenn.
R. R. Co.,* 130 U. S. 637; *East Saginaw R. R. Co.* v. *East
Saginaw,* 19 Mich. 259 (2 Amer. Rep. 82). The exemption
was no part of the original charter under the general law,
and could not be; but was given when the Legislature en-
larged its powers in 1886. When the creditors took the
mortgage from the B. & E. S. R. R. Co. they could only
take a lien upon that which belonged to the company and
which it had the power to convey and transfer.

BRISCOE, J., delivered the opinion of the Court.

This is a suit brought by the Mayor and City Council of
Ocean City, Maryland, against the Baltimore, Chesapeake
and Atlantic Railway Company to recover certain taxes
alleged to be due and unpaid by the defendant company.
The case was tried upon an agreed statement of facts, and
the judgment being for the plaintff, the defendant has
appealed. It appears that the defendant is a corporation
formed under sections 187, 188, 189 and 190, of Article
23 of the Code of Public General Laws, for the purpose
of " owning, possessing, maintaining and operating a rail-
road in this State," formerly known as the Baltimore and
Eastern Shore Railroad; the latter road having been formed

under the general incorporation laws of the State.    By the Act of 1886, chapter 133, the powers of the Baltimore and Eastern Shore Railroad were enlarged, and " its franchises, property, shares of capital stock and bonds " were exempt from all State, county or municipal taxation for the term of thirty years, accounting from the date of the completion of the road, between the *termini* mentioned in its charter, that is, between Eastern Bay in Talbot County and the town of Salisbury in Wicomico County.    This road was completed on or about the first of August, 1891.    By section 5 of the Act, the Baltimore and Eastern Shore Railroad was authorized " to lease or purchase and operate any railroad or railroads " either in or out of this State, for the purpose of carrying on their business, and any other railroad company in this State was also authorized to lease or sell its railroad or other property to this road.

In pursuance of this power, the Baltimore and Eastern Shore Railroad, on the 30th of June, 1890, purchased the property known as the Wicomico and Pocomoke Railroad, a road about thirty miles long, extending from Salisbury to Ocean City and thus consolidating the two roads:    Afterwards, in August, 1894, these two roads, as thus consolidated, together with their property rights, were sold by a decree of the Circuit Court of the United States for the District of Maryland, under certain mortgage foreclosure proceedings, and were purchased by Mr. Nicholas P. Bond, of Baltimore City, who subsequently with others formed the defendant corporation, the Baltimore, Chesapeake and Atlantic Railway Company.

So the principal question presented by this appeal, is whether the property formerly owned by the Wicomico and Pocomoke Railroad, situate in the town of Ocean City and now owned by the appellant company, is exempt from taxation, under section 2 of chapter 133 of the Acts of 1886.

Now, as we have seen, the Act of 1886 provided for the building and working of a railroad from the shores of

Eastern Bay, in Talbot County, to Salisbury, in Wicomico County, passing through the counties of Talbot, Caroline, Dorchester and Wicomico, and it is quite clear, we think, that it was only such property as is necessary for the operation of this road, that the Legislature intended to exempt from State, county and municipal taxation, for the term of thirty years, from the date of the completion of the road. It means the railroad and its property mentioned in the Act and none other.

It is admitted that the Wicomico and Pocomoke Railroad Company was entitled to no such exemption at the time of its purchase by the Baltimore and Eastern Shore Road, either under its charter or by legislative exemption.

It is a sound rule of construction, said this Court, in *State* v. *Baltimore and Ohio R. R. Co.*, 48 Md. 73, that the power of taxation is never presumed to be relinquished unless the intent to relinquish is clearly expressed. *The Delaware Railroad Tax Case*, 18 Wall. 206; *Southwestern Railroad Company* v. *Wright*, 116 U. S. 235.

Nor was the exemption from taxation conferred by the consolidation of the two companies. The fourth section of the Act of 1886 declares that the Baltimore and Eastern Shore Railroad Company shall have power to unite, connect and consolidate with any railroad company or companies either in or out of this State, so that the capital stock of said companies so united, connected and consolidated, may at the pleasure of the directors constitute a common stock, and the respective companies may thereafter constitute one company and be entitled to all the property, franchises, rights, privileges and immunities which *each* of them possess, have and enjoy under and by virtue of their respective charters.

But even if we concede the contention of the appellant that the property in question was exempt from taxation, after its purchase by the Baltimore and Eastern Shore Railroad Company, this would not avail the defendant company in this case. An exemption from taxation is not such a

right or privilege as passes to the purchaser of a railroad without express statutory direction. In *Chesapeake and Ohio Railway Company* v. *Miller*, 114 U. S. 186, it is said: '' The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take toll, to appropriate earth and gravel for the bed of its road or water for its engines and the like. They are positive rights or privileges, without the possession of which the road of the company could not be sucessfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company, the latter is personal and incapable of transfer without express statutory direction.''

In *Picard* v. *Tennessee, &c., R. Co.*, 130 U. S. 641, the Court said : " Yielding to the doctrine that immunity from taxation may be granted, that point being already adjudged, it must be considered as a personal privilege not extending beyond the immediate grantee, unless otherwise so declared in express terms, the same considerations which call for clear and unambiguous language to justify the conclusion that immunity from taxation has been granted in any instance must require similar distinctness of expression before the immunity will be extended to others than the original grantee. It will not pass merely by a conveyance of the property and franchises of a railroad company, although such company may hold its property exempt from taxation." The cases of *Wilson* v. *Gaines*, 103 U. S. 417; *Morgan* v. *Louisiana*, 93 U. S. 217; *Morawetz on Corporations*, sec. 935; *Cook on Stock and Stockholders*, sec. 572, are to the like effect.

There is no such express statutory authority in this case. The 187 and 188 sections of Art. 23 of the Code, relied upon by the appellant, refer to such rights and property, as would pass under the sale of a railroad mentioned in those sections and not to an exemption from taxation such as is

presented here. We are of the opinion, therefore, that the property of the defendant company, described in the agreed statement of facts filed in this case, is liable for taxation and for the reasons we have given the Court committed no error in rejecting the appellant's prayers, so the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided March 14th, 1899).