### BANCROFT v. WICOMICO COUNTY COM'RS et al.

(Circuit Court, D. Maryland. March 21, 1903.)

1. RES JUDICATA—PERSONS CONCLUDED BY JUDGMENT—BONDHOLDERS OF RAILROAD COMPANY.

　　A question as to the liability of the property of a railroad company to taxation, determined in a suit to which the company was a party, is not res judicata as against a mortgage bondholder of the company, where no one claiming under the mortgage was a party.

2. TAXATION—STATUTORY EXEMPTION OF RAILROAD COMPANY—TRANSFER OF PROPERTY.

　　Code Pub. Gen. Laws Md. art. 23, §§ 187, 188, which provide that on the sale of any railroad under a mortgage the purchaser shall be authorized to form a corporation which shall "possess all the powers, rights, immunities and franchises" possessed or enjoyed by the corporation which owned the railroad previous to the sale, under its charter or any statute of the state, is broad enough to pass to the succeeding company an exemption from taxation for a term of years conferred upon the company previously owning the road by a special statute; the word "immunities," used in the statute, including an immunity from taxation, and being an apt word to expressly transfer such exemption, or, in effect, to grant the same exemption to the new corporation.

3. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACT—EXEMPTION FROM TAXATION.

　　Where by the legislation of a state a railroad company is exempted from state, county, and municipal taxation for a term of years after it shall have completed its road, such grant creates a contract between the state and the company and those who subsequently become its creditors, which is impaired by the state, within the inhibition of the federal Constitution, by the taxing of the property of the company by local authorities under the general power conferred on them by the state.

4. TAXATION—STATUTORY EXEMPTION—CONSTRUCTION OF STATUTE.

　　A railroad company authorized by its charter to build a road between two terminal points over a certain route was by a special act of the Legislature granted an exemption from taxation on its property for a term of years from the date of the completion of such road. It was also authorized by the same act to build and acquire by purchase branch and other lines. Held, that the property exempted from taxation was limited to the road built under its charter, and such other property as . was necessary for its operation.

In Equity. Suit to enjoin the levy and collection of taxes. On final hearing.

Nicholas P. Bond and Edward Duffy, for complainant.
James E. Ellegood, for defendants.

MORRIS, District Judge. This is a bill in equity filed by Samuel Bancroft, Jr., a citizen of Delaware, who is a holder of mortgage

¶ 3. See Constitutional Law, vol. 10, Cent. Dig. §§ 303, 408.

bonds issued by the Baltimore, Chesapeake, & Atlantic Railway Company, against the board of county commissioners of Wicomico county, Md., and the five citizens of Maryland who constitute that board. The object of the bill is to enjoin the defendants from levying and collecting taxes upon property of the Baltimore, Chesapeake & Atlantic Railway Company, which the plaintiff claims to be exempt by the law of Maryland from taxation, and the imposition and collection of which taxes, the plaintiff alleges, will impair the obligation of a contract between the state of Maryland and the Eastern Shore Railroad Company, arising out of the act of the General Assembly of Maryland of 1886, p. 209, c. 133, and to which the Baltimore, Chesapeake & Atlantic Railway Company, as the purchaser of said railroad, claims to be entitled under section 188 of article 23 of the Maryland Code of Public General Laws.

Questions of law similar to those raised by this bill of complaint were considered in a prior litigation between the Baltimore, Chesapeake & Atlantic Railway Company itself and the mayor and city council of Ocean City (89 Md. 89, 42 Atl. 922), and also in a case between the same railway company and the county commissioners of Wicomico county (93 Md. 113, 48 Atl. 853), and in those cases the Court of Appeals of Maryland decided adversely to the contention of the complainant in this case.

The questions with regard to the jurisdiction of this court were heretofore considered on a demurrer, and it was held that the diverse citizenship gave the court jurisdiction; that the allegations that the trustee under the mortgage was a nonresident of Maryland, and refused to proceed in this behalf, except upon conditions with which the complainant was unable to comply, were sufficient to give the complainant standing to file this bill. It was further held that the complainant, claiming under the mortgage, was not bound by the judgment against the railway company, to which no one claiming under the mortgage was a party, and the complainant was therefore not estopped as by res judicata. Keokuk & Western R. R. v. Missouri, 152 U. S. 301, 313, 314, 14 Sup. Ct. 592, 38 L. Ed. 450.

The present case is now submitted for final hearing upon bill, answer, and an agreed statement of facts.

The Baltimore & Eastern Shore Railroad Company was first duly incorporated under the general incorporation law of Maryland (Acts 1876, p. 385, c. 242), and afterwards its rights, privileges, franchises, and immunities were enlarged and confirmed by an act of the General Assembly of Maryland passed in 1886 (page 209, c. 133). The act of 1886, p. 209, c. 133, after reciting that the Baltimore & Eastern Shore Railroad Company had been incorporated under the general incorporation law for the purpose of building, equipping, maintaining, and working a railroad from the shores of Eastern Bay, in Talbot county, to the town of Salisbury, in Wicomico county, through Talbot, Caroline, Dorchester, and Wicomico counties, granted to the corporation the power to conduct and operate branch roads, to acquire pleasure resorts along its road, and to acquire wharves and steamboats; and by section 2 it was enacted:

"That said corporation shall have perpetual existence and its franchises, property, shares of capital stock and bonds shall be exempt from all state, county and municipal taxation for the term of thirty years from the date of completion of said road between the termini mentioned in its charter."

Additional sections granted to the Baltimore & Eastern Shore Railroad Company the power to lease or purchase and operate any railroad or railroads, either in or out of this state, for the purpose of carrying on their business, and any other railroad in this state was granted the right to lease or sell its railroad or other property to the Baltimore & Eastern Shore Railroad Company.

The Baltimore & Eastern Shore Railroad Company in 1890 purchased the Wicomico & Pocomoke Railroad—a road about 30 miles long, extending from Salisbury to Ocean City. On July 1, 1890, the Baltimore & Eastern Shore Railroad Company executed a mortgage deed of trust of all its property, and all its rights, franchises, and privileges, to secure an issue of bonds; and on July 2, 1892, in compliance with a covenant in the original mortgage, the Baltimore & Eastern Shore Railroad Company executed a supplementary mortgage deed of trust, whereby it conveyed, by way of further assurance and security, every right, franchise, and immunity and exemption from taxation granted it by the act of 1886. This mortgage was foreclosed in 1894, and all the mortgaged property, franchises, privileges, freedoms, immunities, and exemptions were sold. At the time the enlarged corporate powers and immunities were granted to the Baltimore & Eastern Shore Railroad Company by the act of 1886, and at the date of the execution of the mortgage of 1890 and the supplementary mortgage of 1892, and at the time of the foreclosure of the mortgages, and the sale of the property, franchises, immunities, and exemptions by virtue of the judicial decree foreclosing the mortgages, there were in operation and effect in Maryland sections 187 and 188 of article 23 of the Code of Public Laws of Maryland, as follows:

"Sec. 187. In case of the sale of any railroad situated wholly within this state, or partly within this state and partly within an adjoining state, or the District of Columbia, heretofore or hereafter made by virtue of any mortgage or deed of trust, whether under foreclosure or other judicial proceedings, or pursuant to any power contained in said mortgage or deed of trust, the purchaser or purchasers thereof, or his or their survivor or survivors, representatives or assigns, may, together with their associates, if any, form a corporation for the purpose of owning, possessing, maintaining and operating such railroad, or such portions thereof as may be situated within this state, by filing in the office of the Secretary of State a certificate of the name and style of such corporation, the number of directors.

"Sec. 188. Such corporation shall possess all the powers, rights, immunities, privileges and franchises in respect to such railroad, or the part thereof included in such certificate, and in respect to the real and personal property appertaining to the same, which were possessed or enjoyed by the corporation which owned or held such railroad previous to such sale under or by virtue of its charter and any amendments thereto, and of other laws of this state, or the laws of any other state in which any part of such railroad may have been situated, not inconsistent with the laws of this state."

Pursuant to the provisions of the foregoing sections of the Maryland Code, the purchaser and his associates duly filed the certificate forming the Baltimore, Chesapeake & Atlantic Railway Company. The complainant contends that the said Baltimore, Chesapeake & Atlantic

Railway Company, his mortgagor, is entitled to hold the property, franchises, and immunities so as aforesaid purchased at the said foreclosure sale, with the same immunity and freedom from taxation as the same were held by the Baltimore & Eastern Shore Railroad Company under the provisions of the act of 1886, p. 209, c. 133.

Until the decision of the Court of Appeals of Maryland in 1899, reported in 89 Md., p. 89, and the decision in 1901, reported in 93 Md., p. 113, there had been no decision in Maryland construing the effect of the act of 1886, or the effect of the provisions of the Maryland Code of Public General Laws, art. 23, §§ 187, 188, giving to the purchaser of a railroad in Maryland all the powers, rights, immunities, privileges, and franchises possessed by the corporation which owned or held such railroad before the sale under or by virtue of its charter, and any amendments thereto, or of other laws of the state, so that the Baltimore, Chesapeake & Atlantic Railway Company acquired whatever rights the foreclosure vested in the purchaser, and whatever rights it acquired under section 188 of article 23 of the Maryland Code, without notice of any meaning to be given that legislation, other than the natural meaning of the words, and the construction put upon them by previous decisions.

In Chesapeake & Ohio Railroad Company v. Miller, 114 U. S. 176, 5 Sup. Ct. 813, 29 L. Ed. 121, it was held by the Supreme Court of the United States that the legislative grant by West Virginia to the Covington & Ohio Railroad Company, that "no taxation upon the property of said company shall be imposed by the state until the profits of the said company shall amount to ten per cent. on the capital stock of said company," imported by its language that the contract was personal to that corporation, and intended to benefit those who should subscribe to its stock, and that the property was exempt so long as it was the property of that corporation, and no other, and while it continued the property of that company, and no longer; the exemption to cease when the profits of that particular company should amount to 10 per cent. on the capital stock of that company, and not the capital stock of any other company. The Supreme Court further held that the exempting clause contained no words indicating, either expressly or by any implication, that this immunity was assignable. In that case, as in the present case, the property had passed from the original corporation under judicial sale, and there was a legislative enactment on the subject, the language of which was that "such sale and conveyance shall pass to the purchaser at the sale, not only the works and property of the company as they were at the time of making the deed of trust or mortgage by any works which the company may, after that time and before the sale, have constructed and all other property of which it may be possessed at the time of the sale, other than debts to it * * * upon such conveyance to the purchaser the said company shall ipso facto be dissolved," "and the said purchaser shall forthwith be a corporation by any name which may be set forth in said conveyance or in any writing signed by them," etc. The corporation created by or in consequence of such sale and conveyance shall "succeed to all such franchises, rights, and privileges, and perform all such duties, as would

have been had or should have been performed by the first company but for such sale and conveyance," etc. With reference to this enactment the Supreme Court said (page 185, 114 U. S., and page 818, 5 Sup. Ct., 29 L. Ed. 121):

"The words used are, it will be observed, 'franchises, rights, and privileges, * * * as would have been had * * * by the first company, but for such sale,' etc. ·There is no express reference to a grant of any exemption or immunity. Nothing is said in relation to the subject of taxation. The words actually used do not necessarily embrace a grant of such an exemption. As was said on this point in Morgan v. Louisiana, 93 U. S. 217–223 [23 L. Ed. 860]: 'Much confusion of thought has arisen in this case and in similar cases from attaching a vague and indefinite meaning to the term "franchises." It is often used as synonymous with "rights, privileges, and immunities," though of a personal and temporary character; so that, if one of these exists, it is loosely termed a "franchise," and is supposed to pass upon a transfer of the franchises to the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the .corporation, and without which its roads and works would be of little value—such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights and privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company; the latter is personal, and incapable of transfer without express statutory direction.' ".

The opinion then proceeds (page 186, 114 U. S., and page 818, 5 Sup. Ct., 29 L. Ed. 121):

"Here there is no such express statutory direction. Nor is there an equivalent implication by necessary construction. There is nothing in the language itself, nor the context nor the subject-matter of the legislation, nor the situation and relation of the parties to be affected, which indicates that a grant of an exemption from taxation to a particular railroad corporation, or to a class of such, was in the contemplation of the Legislature."

In Pickard v. East Tennessee, Virginia & Georgia Railroad Co., 130 U. S. 637, 9 Sup. Ct. 640, 32 L. Ed. 1051, it was also held by the Supreme Court that legislative immunity from taxation is a personal privilege, not transferable, and not to be extended beyond the immediate grantee unless otherwise so declared in express terms, and must appear in language so clear and unmistakable as to leave no doubt as to the purpose of the legislature.

In Memphis Railroad Co. v. Commissioners, 112 U. S. 609, 617, 5 Sup. Ct. 302, 28 L. Ed. 837, after citing a number of prior decisions to the same effect, the court said:

"The exemption from taxation must be construed to have been the personal privilege of the very corporation specifically referred to, and to have perished with that, unless the express and clear intention of the law requires the exemption to pass as a continuing franchise to a successor."

By these and other cases dealing with the same subject-matter, it is clear that the exemption from taxation granted to the Baltimore & Eastern Shore Railroad Company could not be assigned by it so as to pass a continuing exemption to the purchaser under the foreclosure of the mortgage, and the claim of the purchaser in this case must rest solely upon the language of sections 187 and 188 of article 23

of the Maryland Code of Public General Laws. And the question now is whether section 188 does express a clear legislative intent that the purchaser shall obtain, as a new corporation, that exemption from taxation which the mortgagor company possessed and enjoyed. And this question narrows itself to the force and meaning to be given to the word "immunities," used in section 188. It is true that no case decided by the Supreme Court has yet passed upon that precise question, raised in precisely the same way in which it arises in this case; but the force and effect of the word "immunities" was carefully considered in Louisville & Nashville Railroad Company v. Palmes (1883) 109 U. S. 244, 3 Sup. Ct. 193, 27 L. Ed. 922. The Alabama & Florida Railroad Company was entitled by the law of Florida to tax exemption for its capital stock and property. By foreclosure sale the railroad, and all the rights, privileges, and franchises of that company, became vested in the Pensacola & Louisville Railroad Company, and to that company, by a special law, was granted the same tax exemption as the first company had. By a second foreclosure sale the title of the second company to the railroad was transferred to a third company, viz., the Pensacola Railroad Company, "together with all the franchises, rights, privileges, easements and immunities" of the second company, viz., the Pensacola & Louisville Company. By an act of Legislature the third company, viz., the Pensacola Railroad Company, had been empowered to acquire by purchase and assignment all the property, rights, franchises, privileges, and immunities of the Pensacola & Louisville Railroad Company, and upon completion of said purchase and assignment the said Pensacola Company was to be deemed, in law and equity, fully invested with and entitled to all the said property, rights, franchises, privileges, and immunities of said Pensacola & Louisville Railroad Company, as though the same were originally granted to or acquired by the said Pensacola Railroad. Commenting on the foregoing language of the act incorporating the Pensacola Railroad Company, and empowering it to acquire by purchase and assignment all the property, rights, franchises, privileges, and immunities of the Pensacola & Louisville Railroad Company, and to be fully invested with them—as fully as if originally granted to the Pensacola Railroad Company—the Supreme Court said:

"It is claimed that this language is broad enough to cover the assignment and transfer of the immunity from taxation granted to the Pensacola & Louisville Railroad by the eighteenth section of its charter. And we are of this opinion. The language is comprehensive and unequivocal, and the word 'immunity' is apt to describe the exemption claimed."

The opinion of the Supreme Court, however, then proceeds to dispose of the case on entirely different grounds, but not at all modifying the conclusion above stated.

In Phœnix Insurance Company v. Tennessee (1896) 161 U. S. 174, 16 Sup. Ct. 471, 40 L. Ed. 660, the force and effect of the word "immunity" in respect to an exemption from taxation was emphasized. In that case it appeared that the legislature of Tennessee incorporated the Bluff City Insurance Company, and enacted "that said company shall pay to the state an annual tax of one-half of one per cent. on each share of the capital stock subscribed which shall be in lieu of all other

taxes." Subsequently the Legislature incorporated the De Soto Insurance Company, and granted to it "all the rights, privileges and immunities of the Bluff City Insurance Company." Subsequently the Legislature also incorporated the Washington Fire & Marine Insurance Company (its name being afterwards changed to the Phœnix & Marine Insurance Company, the plaintiff), and granted to it all the rights and privileges (omitting the word "immunities") which had been theretofore granted to the De Soto Insurance Company. In passing upon the question whether the insurance company last incorporated, by the grant to it of all the rights and privileges of the De Soto Company, obtained the immunity from taxation which the De Soto Company enjoyed, the Supreme Court said:

"The words 'rights, privileges, and immunities,' when used in a statute of the kind under consideration, are certainly full and ample for the purpose of granting an exemption from the taxation contained in the first or original statute, and when, in granting to still another company certain rights, the word 'immunities' is dropped, its absence would seem and ought to have some special significance. In granting to the De Soto Company 'all the rights, privileges, and immunities' of the Bluff City Company, all words were used which could be regarded as necessary to carry the exemption from taxation possessed by the Bluff City Company, while in the next following grant —that of the charter of the plaintiff in error—the word 'immunities' is omitted. Is there any meaning to be attached to that omission? And if so, what? We think some meaning is to be attached to it. The word 'immunity' expresses more clearly and definitely an intention to include therein an exemption from taxation than does either of the other words. Exemption from taxation is more accurately described as an immunity than as a privilege, although it is not to be denied that the latter word may sometimes and under some circumstances include such exemption."

In Tennessee v. Whitworth (1886) 117 U. S. 139, 6 Sup. Ct. 649, 29 L. Ed. 833, it was held that in a grant by the Legislature to a new railroad company of "all the rights, powers, and privileges" of an old company which possessed exemption from taxation, that exemption was granted to the new company, even without the word "immunity"; but the Supreme Court, in Phœnix Insurance Co. v. Tennessee, 161 U. S. 182, 16 Sup. Ct. 474, 40 L. Ed. 660, points out that this decision should be "confined to the peculiar language used in the various statutes therein cited, wherein, aside from the word 'privilege,' it may be argued that, considering all the language used in those statutes, the intention of the Legislature to exempt from taxation may fairly well be made out."

From the foregoing citations, I think it must be deduced that when, in addition to the words "powers, rights, privileges, and franchises," there is added the word "immunities," in legislative grants to a new company of the same charter attributes which were enjoyed by an older corporation which possesses exemption from taxation, the word "immunities" includes immunity from taxation, and is the apt word used in legislation to express that particular exemption. If exemption from taxation can be granted by any general words, what could be stronger evidence of that intent than the language of section 188 of article 23 of the Maryland Code of Public General Laws?

"Sec. 188. Such corporation [that is to say, the new corporation formed by the purchaser of a railroad at a judicial sale] shall possess all the powers,

rights, immunities, privileges and franchises in respect to such railroad, or the part thereof included in such certificate, and in respect to the real and personal property appertaining to the same, which were possessed or enjoyed by the corporation which owned or held such railroad previous to such sale under or by virtue of its charter and any amendments thereto, and of other laws of this state or the laws of any other state in which any part of such railroad may have been situated; not inconsistent with the laws of this state."

If the meaning of the word "immunity," when used by the Legislature, includes immunity from taxation, then it is not possible to doubt the meaning of section 188. Its force and effect do not depend at all upon the assignability of an exemption from taxation, and are not affected by the fact that it was an exemption personal to the Baltimore & Eastern Shore Railroad Company, for, although it may be spoken of as the continuing of a previous exemption, it is in fact a new legislative grant to a new corporation created to receive it. It is a grant in respect to certain real and personal property pointed out and designated by its having been owned previous to the sale by the original company. It is difficult to conceive what immunity in respect to this property could be meant, if not the immunity from taxation which the original company had possessed. It is not, however, an irrevocable grant, but, under the Constitution of Maryland, may be repealed or modified at the pleasure of the Legislature. The effect of sections 187 and 188 of the Maryland Code of Public General Laws is to say to those asked to loan money to help build a railroad, which the Legislature has thought sufficiently important to the development of the state to grant tax exemption to the corporation chartered to build it, "If you loan your money you shall have as an element of value in your security, if you are obliged to foreclose and sell the railroad, the same immunities which we have granted to the company which proposes to build the road, subject, however, to the right to take away or modify the exemption by a law of the state if any Legislature thinks the welfare of the state requires it." It seems to me the language fully satisfies the requirement laid down by the Supreme Court in Pickard v. Tennessee, etc., R. Co., 130 U. S. 641, 9 Sup. Ct. 640, 32 L. Ed. 1051, that, to justify the conclusion that such exemption is granted, it must appear by language so clear and unmistakable as to leave no doubt of the purpose of the Legislature.

I have been constrained, after a painstaking consideration of this case, to the conclusion that under section 188 of article 23 of the Maryland Code of Public General Laws, fairly interpreted in the light of the decisions of the Supreme Court, the Baltimore, Chesapeake & Atlantic Railway Company, in respect to the property purchased under the foreclosure sale, and which was exempt while in the possession of the Baltimore and Eastern Shore Railroad Company, did have granted to it the exemption possessed by the original company, and that the exercising of the taxing power delegated by the state Legislature to the board of county commissioners, by imposing a tax on this property, is a legislative act impairing the obligation of the contract of exemption, and within the inhibition of the federal Constitution. I have arrived at this conclusion reluctantly, because, while it is the duty of the federal courts, in questions of this nature, to exercise their own independent judgment, they should be

slow to differ from the state court, and lean towards an agreement with it, if the question seems doubtful. Folsom v. Township, 159 U. S. 611, 16 Sup. Ct. 174, 40 L. Ed. 278; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Loeb v. Trustees of Columbia Tp., 179 U. S. 472–473, 21 Sup. Ct. 174, 45 L. Ed. 280.

It remains to consider what property is within a strict construction of the exemption. By section 188 of article 23, the immunity is declared to be the same which the original corporation enjoyed in respect to the railroad sold, and the real and personal property appertaining to the same. The three classes of property which were conveyed by the foreclosure sale, as stated in complainant's brief, are:

"First. Property formerly belonging to the Baltimore & Eastern Shore Railroad, and forming a part of the line built by it under its charter power to construct a road between Eastern Bay and Salisbury.

"Second. Property formerly owned by the Baltimore & Eastern Shore Railroad, and acquired by it under its purchase of the Wicomico & Pocomoke property.

"Third. Property at no time owned by the Baltimore & Eastern Shore Railroad, but acquired by the Baltimore, Chesapeake & Atlantic Railway Company subsequent to its organization. This class consists mainly of steamboats and wharf property."

In Baltimore, Chesapeake & Atlantic Railway Co. v. Ocean City, 89 Md. 89, 42 Atl. 922, the Court of Appeals of Maryland had before it the question whether the property purchased by the Baltimore & Eastern Shore Railroad Company, known as the Wicomico & Pocomoke Railroad, was within the exemption granted by the act of 1886, p. 209, c. 188, and the court said (89 Md. 97, 42 Atl. 922):

"The act of 1886 provided for the building and working of a railroad from the shores of Eastern Bay, in Talbot county, to Salisbury, in Wicomico county, passing through the counties of Talbot, Caroline, Dorchester, and Wicomico; and it is quite clear, we think, that it was only such property as is necessary for the operation of this road that the Legislature intended to except from state, county, and municipal taxation for the term of thirty years from the date of the completion of the road. It means the railroad and its property mentioned in the act, and none other."

This seems a fair construction of the act of 1886, p. 209, c. 133, considering the great strictness with which tax exemptions are construed. Therefore only the property of the first class above mentioned is exempt.

I will sign a decree for an injunction, in accordance with the views herein expressed.