WICOMICO COUNTY COM'RS et al. v. BANCROFT.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1905.)

No. 516.

1. RES JUDICATA—PERSONS CONCLUDED BY JUDGMENT—BONDHOLDERS OF RAILROAD COMPANY.

A question as to the liability of the property of a railroad company to taxation, decided in a suit to which the company was a party, is not res judicata as against holders of mortgage bonds of the company, previously issued, where no one representing the mortgage interest was a party.

2. TAXATION—SUIT TO ENJOIN ENFORCEMENT—INTEREST OF COMPLAINANT.

A holder of mortgage bonds of a railroad company has such an interest in its property as entitles him to maintain a suit to enjoin its illegal taxation, where a proper showing is made of the refusal of the mortgage trustee to prosecute such suit.

[Ed. Note.—Persons entitled to injunction restraining, or damages for wrongful enforcement of, tax, see note to Bayles v. Dunn, 54 C. C. A. 550.]

3. SAME—STATUTORY EXEMPTION · OF RAILROAD COMPANY—EFFECT OF REORGANIZATION UNDER MARYLAND STATUTE.

Code Md. 1888, art. 23, §§ 187, 188, which provide that on the sale of any railroad under a mortgage the purchaser shall be authorized to form a corporation to own and operate such railroad, which shall "possess all the powers, rights, immunities, privileges and franchises in respect to such railroad, and in respect to the real and personal property appertaining to the same which were possessed or enjoyed by the corporation which owned or held such railroad previous to such sale" under its charter or any statute of the state, are broad enough to pass to the reorganized company an exemption from taxation for a term of years conferred upon the original company by a special statute, the word "immunities" being an apt term to express the intention of the Legislature that an exemption from taxation should be included in the rights vesting in the new company.

4. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF STATUTES. ·

A federal court is not bound to follow the construction placed upon a state statute by the local courts in a suit involving rights under the statute which accrued prior to such construction.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 957.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hite v. Hite, 29 C. C. A. 553.]

5. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACT—EXEMPTION FROM TAXATION.

Where, by special act of the Legislature of a state, a railroad company is exempted from state, county, and municipal taxation for a term of years, such grant creates a contract between the state and the company, and those who subsequently become its creditors or succeed to its rights, which is impaired by the state, within the inhibition of the federal Constitution, by the taxing of the company's property by the local authorities under the general powers conferred on them by statute.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 303.]

6. TAXATION—EXEMPTION OF RAILROAD—CONSTRUCTION OF STATUTE.

A railroad company authorized by its charter to build a road between two terminal points on a designated route was by special act granted an exemption from taxation on its property for a term of years after completion of its road. It was also authorized generally by the same

act to build or acquire by purchase other lines of road. *Held*, that the property exempted from taxation was limited to the road built under its charter and such other property as was necessary for its operation.

Appeal and Cross-Appeal from the Circuit Court of the United States for the District of Maryland.

For opinion below, see 121 Fed. 874.

Jas. E. Ellegood, for appellants.

N. P. Bond (Bond & Robinson, on the brief), for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and BRAWLEY, District Judge.

PRITCHARD, Circuit Judge. This is a cross-appeal from a decree of the Circuit Court for the District of Maryland, rendered in a cause wherein a certain bondholder of the Baltimore, Chesapeake & Atlantic Railway Company is plaintiff and the county commissioners of Wicomico county, of the state of Maryland, are defendants. The suit is brought to restrain the defendants from levying taxes on the mortgaged property represented by the bonds and from enforcing the payment of taxes by a sale of the property. It appears from the admitted facts in the case that the corporation was formed to build a line of railroad from Eastern Bay, in Talbot county, to the town of Salisbury, in Wicomico county. It also appears the corporation obtained from the Legislature of Maryland an act enlarging its powers and granting it certain privileges and immunities. The act in question is chapter 133, pp. 210, 211, of the Laws of Maryland of 1886, and the sections of the act which more particularly relate to the issues in this case are Nos. 2, 4, and 5, which are as follows:

"Sec. 2. And be it enacted, that said corporation shall have perpetual existence, and its franchises, property, shares of capital stocks and bonds shall be exempt from all state, county or municipal taxation for the term of thirty years, accounting from the date of the completion of said road between the termini mentioned in its charter."

"Sec. 4. And be it enacted, that the said Baltimore & Eastern Shore Railroad Company, aforesaid, shall have power to unite, connect and consolidate with any railroad company or companies, either in or out of this state, so that the capital stock of said companies so united, connected and consolidated (respectively), may, at the pleasure of the directors, constitute a common stock, and the respective companies may thereafter constitute one company and be entitled to all the property, franchises, rights, privileges and immunities which each of them possess, have and enjoy, under and by virtue of their respective charters.

"Sec. 5. And be it enacted, that the Baltimore & Eastern Shore Railroad Company shall have power to lease or purchase and operate any railroad or railroads, either in or out of the state, for the purpose of carrying on their business, and any other railroad company in this state shall have the right to lease or sell its railroad or other property to the said Baltimore & Eastern Shore Railroad Company."

The Baltimore & Eastern Shore Railroad Company, in compliance with the provisions of the act, proceeded to construct the road between the termini in its charter, which it completed in August, 1891, and also in June, 1890, purchased all the property of the Wicomico & Pocomoke Railroad Company, which was duly conveyed to it by deed. The

Wicomico & Pocomoke Railroad Company consisted of a line of road about 30 miles in length, extending from Salisbury to Ocean City, and, with the line of railroad complete, the Baltimore & Eastern Shore Railroad consisted of a line of road about 90 miles in length from Eastern Bay to the Atlantic Ocean. After the Baltimore & Eastern Shore Railroad Company had acquired the Wicomico & Pocomoke Railroad it mortgaged the whole of its property to secure an issue of $1,600,000 of mortgage bonds at par value. This mortgage describes the property as follows: "All and singular the entire line of railroad of the party of the first part (The Baltimore & Eastern Shore Railroad, situate, lying and being in the state of Maryland, between Broad Cove, Eastern Bay, Talbot county, and Salisbury, in Worcester [sic] county), and extending from said termini through the counties of Talbot, Caroline, Dorcester and Wicomico, in said state, and also all the line of railroad from Salisbury, Wicomico county, and Hammock Point, in Worcester county, in said state, which said last mentioned railroad comprised the railroad of Wicomico & Pocomoke Railroad Company, an entire distance of about ninety miles," and also steamboats, docks, piers, rolling stock, etc.; and the rights, privileges, franchises, and immunities, and exemptions, including the "immunity and exemption from taxation granted to, conferred and bestowed on the party of the first part." This mortgage was foreclosed in 1894, by a decree of the Circuit Court for the District of Maryland, and the purchaser of the said mortgaged property at the sale thereof organized a corporation under the name of the Baltimore, Chesapeake & Atlantic Railway Company, under the provisions of sections 187 and 188 of article 23 of the Code of Maryland of 1888, which provisions are as follows:

"Sec. 187. In case of the sale of any railroad situated wholly within this state, or partly within this state and partly within an adjoining state, or the District of Columbia, heretofore or hereafter made by virtue of any mortgage or deed of trust, whether under foreclosure or other judicial proceedings, or pursuant to any power contained in said mortgage or deed of trust, the purchaser or purchasers thereof, or his or their survivor or survivors, representatives or assigns, may, together with their associates, if any, form a corporation for the purpose of owning, possessing, maintaining and operating such railroad, or such portions thereof, as may be situated within this state, by filing in the office of the Secretary of State a certificate of the name and style of such corporation, the number of directors," etc.
"Sec. 188. Such corporation shall possess all the powers, rights, immunities, privileges and franchises in respect to such railroad, or that part thereof included in such certificate, and in respect to the real and personal property appertaining to the same, which were possessed or enjoyed by the corporation which owned or held such railroad previous to such sale under or by virtue of its charter and any amendments thereto, and of other laws of this state, or the laws of any other state in which any part of such railroad may have been situated, not inconsistent with the laws of this state."

Pursuant to the foregoing provisions of the Code of Maryland, the purchaser and his associates duly filed a certificate forming the Baltimore, Chesapeake & Atlantic Railway Company. The complainant contends that the Baltimore, Chesapeake & Atlantic Railway Company, as mortgagor, is entitled to all the property, franchises, and immunities purchased as aforesaid at foreclosure sale with the same immunity and freedom from taxation as the same was held by the Balti-

more & Eastern Shore Railroad Company, under the provisions of Act 1886, p. 209, c. 133.

In determining the question of jurisdiction the court held that diverse citizenship gave it jurisdiction, and in passing upon the preliminary questions the learned judge said:

> "The questions with regard to the jurisdiction of this court were heretofore considered on a demurrer, and it was held that the diverse citizenship gave the court jurisdiction; that the allegation that the trustee under the mortgage was a nonresident of the state of Maryland, and refused to proceed in this behalf except on conditions with which the complainant was unable to comply, were sufficient to give complainant a standing to file his bill. It was further held complainant, claiming under the mortgage, was not bound by the judgment against the railway company, to which no one claiming under the mortgage was a party, and the complainant was therefore not estopped as by res adjudicata."

This ruling of the court is sustained by a number of decisions. A mortgagee is not bound by any proceedings against his mortgagor which were instituted subsequent to the execution of the mortgage, unless he was a party thereto. Keokuk & W. R. R. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450; Campbell v. Hall, 16 N. Y. 575; Carroll v. Goldschmidt, 83 Fed. 510, 27 C. C. A. 566. While it is true that certain suits were instituted in the courts of Maryland, one of which was between the Baltimore, Chesapeake & Atlantic Railway Company, mortgagor, and the mayor and city council of Ocean City, and the other between the mayor and plaintiff, yet complainant was not a party to either of these suits. Complainant is the holder of 20 bonds of the face value of $1,000 each, secured by a mortgage made by the Baltimore, Chesapeake & Atlantic Railway Company to the Atlantic Trust Company of New York, long prior to the institution and final adjudication of the cases in the courts of Maryland. The interest of complainant, therefore, is of such a character as to entitle him in a court of equity to seek the relief to which he claims to be entitled under the allegations contained in the bill. The Balt. Trust & G. Company v. Balt. (C. C.) 64 Fed. 153; Barnes v. Kornegay (C. C.) 62 Fed. 671; Mercantile T. & Dep. Co. v. Tex. Ry. (C. C.) 51 Fed. 529.

We now come to consider the question as to whether complainant is entitled to the relief sought in the bill, and in order to determine this question it is necessary to consider the provisions of sections 187 and 188 of article 23 of the Code of Maryland of 1888. It was clearly the intention of the Legislature to provide means by which corporations that became insolvent or otherwise embarrassed could be reorganized and continued under the provisions of the charter which originally brought them into existence. These sections were evidently framed for the purpose of providing for emergencies like the one presented in this case. There is a general inclination on the part of state legislatures to grant immunities to railroads and other corporations with the view of encouraging the development of the particular section of country through which they are to be constructed. To undertake to build a short line of railroad in most sections of the country is a precarious one, to say the least of it, and, in the absence of aid by subscription or immunity from taxation, instances are very rare where in-

dividuals are willing to embark in such hazardous enterprises. In the present case the Legislature of Maryland seemed to adopt this policy, and in order to secure the construction of a road granted certain privileges, franchises, and immunities to the Baltimore & Eastern Railroad Company for a period of 30 years; but it seems, with all the encouragement and aid which had been given this company, it was unable to stem the tide, and as a result its property was sold under foreclosure, and was purchased by the Baltimore, Chesapeake & Atlantic Railway Company. That the Legislature had the power to exempt from taxation the Baltimore & Eastern Shore Railroad Company at the time it was incorporated is unquestioned, and, such being the case, it clearly had the right to provide by statute, as it did in this instance, the means by which the exemption from taxation granted to the Baltimore & Eastern Shore Railroad Company should be extended to any company which might undertake to rehabilitate such original corporation in the event of its becoming insolvent. Did the sale of the property of the Baltimore & Eastern Shore Railroad Company, under the decree which directed the foreclosure of the mortgage, and which undertook to pass the rights, privileges, and franchises granted to said company, have the effect of exempting from taxation the property thus acquired by the purchaser at such sale? In the case of the Chesapeake & Ohio R. R. Co. v. Miller, 114 U. S. 185, 5 Sup. Ct. 813, 29 L. Ed. 121, the court held the original company was exempt from taxation. In that case there was a sale, as in this instance, of all the property, rights, and franchises of the road, and there was also a legislative enactment which provided that the new company should succeed to such franchises, rights, and privileges as would have been passed by the first company but for such sale. The Supreme Court, in discussing this question, said:

"There is no express reference to a grant of any exemption or immunity; nothing is said in relation to the subject of taxation. The words actually used do not necessarily embrace a grant of such an exemption. As was said on this point in Morgan v. Louisiana, 93 U. S. 217, 223, 23 L. Ed. 860: 'Much confusion of thought had arisen in this case and in similar cases from attaching a vague and undefined meaning to the term "franchises." It is often used as synonomous with "rights, privileges, and immunities," though of a personal and temporary character; so that, if any of these exist, it is loosely termed "franchise," and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchises to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as a part of the property of the company; the latter is personal, and is incapable of transfer without express statutory directions.' Here there is no such express statutory direction. Nor is there an equivalent implication by necessary construction. There is nothing in the language itself, nor in the context, nor the subject-matter of the legislation, nor the situation and relation of the parties to be affected, which indicates that a grant of an exemption from taxation to a particular railroad corporation, or to a class of such, was in the contemplation of the legislature."

In Memphis R. R. Co. v. Com'rs, 112 U. S. 609, 617, 5 Sup. Ct. 299, 302 (28 L. Ed. 837), after citing a number of decisions to the same effect, the court said:

"According to the principles of those decisions, the exemption from taxation must be construed to have been the personal privilege of the very corporation specifically referred to, and to have perished with that, unless the express and clear intention of the law requires the exemption to pass as a continuing franchise to a successor."

In view of the authorities bearing on this question, it is clear that the exemption from taxation granted to the Baltimore & Eastern Shore Railroad Company by its charter was not assignable, and that a sale of its property did not, under such charter, carry with it an exemption from taxation. We are therefore called upon to decide as to whether the word "immunities" in section 188 is sufficient in its nature to exempt the new company from taxation. There are a number of cases wherein companies have been organized and the courts have been asked to decide whether the legislative grant authorizing the transfer of rights, privileges, and franchises to the company thus organized had the effect of exempting such corporations from taxation; but the courts have in most instances held that the use of these terms did not give the new companies exemption from taxation. In the case of Phœnix Ins. Co. v. Tenn., 161 U. S. 174, 16 Sup. Ct. 471, 40 L. Ed. 660, it was held that, where the word "immunity" was omitted in the last legislative grant the words "rights and privileges" did not exempt the company from taxation. In that case the court said:

"The word 'immunity' expresses more clearly and definitely an intention to include therein an exemption from taxation than does either of the other words. Exemption from taxation is more accurately described as an 'immunity' than as a privilege, although it is not to be denied that the latter word may sometimes and under some circumstances include such exemption."

In passing upon this question it is necessary to ascertain the legislative intent as contained in section 188, and an examination of that section leads us to the conclusion that the Legislature fully understood the force and effect of the different terms used therein. In construing section 188 as affecting the rights of the Baltimore, Chesapeake & Atlantic Railway Company which was organized under its provisions, we are of opinion that the word "immunities" was placed in said section for the purpose of exempting from taxation any and all companies thus reorganized which had been granted exemption from taxation by the Legislature in the first instance. In view of the decisions we are forced to the conclusion that the word "immunities" is an apt expression in the present instance, and must be construed to mean exemption from taxation.

The court, in dealing with this question, was not bound to follow the rule of construction adopted by the state court, inasmuch as the organization of the Baltimore, Chesapeake & Atlantic Railway had been consummated, and its bondholders had entered into a contract with the state of Maryland by which it was agreed that in consideration of the construction of said road said company was to be exempt from taxation for a period of 30 years from the date of the completion of the same, and all rights of the bondholders had accrued prior to the rendition of

the decisions of the court of Maryland; and in view of the fact that the purchasers had formed the Baltimore, Chesapeake & Atlantic Railway Company under the provisions of sections 187 and 188 of article 23 of the Code of Maryland of 1888 and the bonds of complainant had been issued and secured by the mortgage dated September 1st, anterior to the decisions of the Court of Appeals of Maryland. The Supreme Court of the United States in the case of Burgess v. Seligman, 107 U. S. at page 33, 2 Sup. Ct. at page 21 (27 L. Ed. 359), said:

"The federal courts have an independent jurisdiction in the administration of state laws co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled it is the right and duty of the federal courts to exercise their own judgment, as they always do in reference to the doctrines of commercial law and general jurisprudence. So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued."

The charter granted by the state of Maryland, amendments thereto, and section 188 of the Code of that state, constitute a contract between the state and the railroad company by which, among other things, "immunity" from taxation is offered as a consideration or inducement to secure the construction of the railroad between the points mentioned in the charter, and, as such, becomes a part of the contract between the state and the railroad company; and the bondholders by virtue of their interest in the original corporation are entitled to this exemption. The demand on the part of the county commissioners of Wicomico county is in the nature of a legislative act, and is therefore in violation of article 1, cl. 10, of the Constitution of the United States, which provides "no state shall pass any law impairing the obligation of contracts." We think that the Legislature, by the enactment of section 188, intended that such property as was necessary for the operation of the original railroad should be exempt from taxation as enjoyed by that company at the time of the completion of the road. The three classes of property conveyed by the foreclosure sale, as set forth in complainant's brief, are as follows:

"(A) Property formerly belonging to the Baltimore & Eastern Shore Railroad and forming a part of the line built by it under its charter power to construct a road between Eastern Bay and Salisbury.

"(B) Property formerly owned by the Baltimore & Eastern Shore Railroad and acquired by it under its purchase of the Wicomico & Pocomoke property.

"(C) Property at no time owned by the Baltimore & Eastern Shore Rail-

road, but acquired by the Baltimore, Chesapeake & Atlantic Railway Company subsequent to its organization. This class consists mainly of steamboats and wharf property."

In considering this subject in the case of Baltimore, Chesapeake & Atlantic Railway Co. v. Ocean City, 89 Md. 89, 97, 42 Atl. 922, the court, among other things, said:

"The act of 1886 provided for the building and working of a railroad from the shores of Eastern Bay, in Talbot county, to Salisbury, in Wicomico county, passing through the counties of Talbot, Caroline, Dorcester, and Wicomico and it is quite clear, we think, that it was only such property as is necessary for the operation of this road that the Legislature intended to exempt from state, county, and municipal taxation for the term of thirty years from the date of the completion of the road. It means the railroad and its property mentioned in the act, and none other."

We are therefore of opinion that only such property as is mentioned in class "A" is entitled to exemption from taxation under the provisions of section 188.

After carefully considering the authorities bearing on the several questions raised, we are of opinion, for the reasons stated, that there is no error. Therefore the judgment of the circuit court is affirmed.