## AUTOMOTIVE ELECTRIC ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10564.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1948.

Stanley H. Fulton, of Detroit, Mich. (Stanley H. Fulton, of Detroit, Mich., on the brief), for petitioner.

I. Henry Katz, of Washington, D. C. (Theron Lamar Caudle, Sewall Key, Robert N. Anderson, and Howard P. Locke, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The respondent declined to recognize the petitioner as a business league exempt from taxation under § 101(7) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 101(7), for the years 1940, 1941 and 1942, asserted deficiencies and added penalties for failure to file timely returns. The Tax Court sustained both deficiencies and penalties and the petitioner concedes that if it is not exempt they are correct in amount. The only question involved is whether the petitioner, by purpose, organization and activities, is within the exempting clause.

Section 101(7) provides that the following organizations shall be exempt from the tax on corporations: "Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *."

Ne definition of the term "business league" is to be found in the statute, but Treasury Regulation 103, § 19.101(7)-1 and Treasury Regulation 111, § 29.101(7)-1, which are applicable to the taxable years, interpret the term as follows: "A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular busi-

ness of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. *An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis, or produces only sufficient income to be self-sustaining, is not a business league.* \* \* \* "

This regulation has been in effect without substantial change, since the enactment of the Revenue Act of 1918. It has, in repeated adjudications, been held to have the quality of law. Underwriters' Laboratories, Inc. v. Com'r, 7 Cir., 135 F.2d 371; Retailers' Credit Association v. Com'r, 9 Cir., 90 F.2d 47; Uniform Printing & Supply Co. v. Com'r, 7 Cir., 33 F.2d 445. Applying it, the Tax Court reasoned that the petitioner was not exempt because one of its major and important activities was the preparation, publication and sale of its universal catalog by which it rendered a particular service to the individual members of its manufacturing division, and so was not the kind of organization which Congress intended to exempt, and we are reminded of the established rule that exemption provisions must be strictly construed in favor of the taxing authority.

The facts were found as stipulated. They disclose that while the petitioner was organized in 1917, it became incorporated in 1939 as a non-profit corporation. Its membership is divided into manufacturing, distribution and field divisions. The manufacturing division includes 19 companies making original equipment for motor vehicles. The distribution division consists of distributors who represent at least one manufacturing member by selling its products to wholesalers and maintaining service facilities. Seventy distributors are included in this division. The field division is made up of service companies which render warranty service for at least one manufacturing member and have drive-in facilities. 2,200 stations comprise this division. The

manufacturing division alone charges an entrance fee which is $250. Annual dues are $300 for manufacturers and $100 for distributors. The members of the field division pay no dues and are not subject to assessments. Any qualified individual or firm may join the corporation subject to the approval of its board of directors, provided the applicant is not a distributor or dealer in automobiles or trucks. Only the manufacturers and distributors may vote or hold office. The activities of the association include meetings on a national scale, held annually, with sectional meetings held from time to time, and reports to the members of each division as to accomplishments.

In 1927 the petitioner began the publication of its catalog listing therein the products of its manufacturing members. It was issued every other year with a supplement in the intervening years, although publication was suspended during the conversion of the automobile industry to war production after 1942. The book was available to non-members as well as members, at a cost averaging 55¢ per copy, and 102,614 were sold in the three year period beginning in 1942. 94% of those sold was purchased by members—approximately half by those in the distribution division and the other half by those in the field division. It becomes unnecessary to detail other services of the petitioner to members and non-members, since the character of this publication as a means for the performance of particular services for the petitioner's manufacturing and distributor members within the provision of the regulations, formed the main, if not the only basis for the Tax Court decision.

It was neither contended by the respondent nor found by the Tax Court, that the petitioner was organized for profit within cases typified by West Side Tennis Club v. Com'r, 2 Cir., 111 F.2d 6, 130 A.L.R. 103, Certiorari Denied 311 U.S. 674, 61 S.Ct. 40, 85 L.Ed. 434, nor that it was in competition with private business engaged in similar activities as in Underwriters' Laboratories, Inc. v. Com'r, supra, nor that it paid large salaries or granted liberal expense allowances to personnel, or realized large profits in substantial dealings with

non-members, as in National Automobile Dealers' Association, 2 T.C. 1269, nor that it bore any similarity to the cooperative enterprise denied exemption in Florists' Telegraph Delivery Association, Inc., 47 B.T.A. 1044. We are concerned primarily with the holding of the Tax Court that the catalog, both from a time and money standpoint, was one of the important activities of the petitioner; that the petitioner allocated a large part of its overhead expense to it and received a large part of its gross receipts therefrom, and that when such receipts were insufficient to pay the expenses of publication they were made up from dues and assessments; that the catalog specifically listed goods which the manufacturing members were selling, and so was a particular service to them rather than one directed to the improvement of business conditions generally, in the field of servicing automobiles. If these findings of the Tax Court are sustained by substantial evidence, and the inferences drawn therefrom are reasonable, we must conclude that the Tax Court decision was right.

That the publication of the catalog was a major activity of the association, is not to be doubted. Receipts from its sale comprised 69% of the total receipts of the petitioner from all sales and services in 1940; 40% in 1941 when only a supplement was issued, and 80% in 1942. The petitioner's accounting system allocated 75% of its overhead to its sale. The determinative question is whether, in purpose and effect, the catalog was designed to channel the product of manufacturing members through their distributors to the field members, and so to ultimate automobile owners, primarily for the benefit of the association's manufacturing members which supplied the original equipment, rather than for the improvement of business conditions generally, even though there may be incidental benefit to the automobile repair and replacement business.

It must first be observed that the manufacturing division membership is limited to those who make and sell original equipment, by which is meant equipment that is installed in motor vehicles by automobile companies when such vehicles are first assembled for the market. It may be assumed by the very nature of this limitation, that there exist in the industry manufacturers who make and market parts for replacement who do not initially supply such parts to the motor manufacturer. It is implicit in the petitioner's argument that the original supply business is a well-defined classification, that manufacturers in that class have interests in common which justify an organization to promote the general welfare of those who, as original suppliers, also distribute, sell and install replacement parts, that those who furnish the original equipment have something akin to a vested right in their replacement and have no obligation to those who are not members either because they are not original suppliers and so may not qualify as members, or, being original suppliers, do not choose to become members. Whether this is so we do not undertake to decide. Nor, since this is solely a tax case, do we explore the record for trace of obligation assumed by field members, or control imposed upon them, to confine their purchases of replacement parts to original suppliers.

The catalog, however, discloses that in many of its classifications of electrical service parts for the various types of motor vehicles, there is listed but a single original supplier, that in other classifications there are listed two and, at most, three suppliers. At the top of all the 381 pages of the catalog appears the insignia of the association with the phrase, "Original Equipment Parts." At the bottom of every left-hand page is the line "Car Owners Expect ORIGINAL Parts," in heavy type. At the bottom of the right-hand page is the sentence "From the Bins of the ORIGINAL Equipment Manufacturers." This clearly is advertising for the benefit of the single or limited suppliers and the dealer who is persuaded by it to purchase original parts is therefore restricted, in most cases, to the products of one manufacturer. This is so when he requires carburetors, magnetos, lamps or keys, although in some of the classifications other members of the manufacturing division may be able to supply replacement parts for cars which they have not originally equipped with such parts.

It would seem, therefore, that the design of the catalog with its repeated em-

phasis on the importance of replacing an out-worn part by an original part, is to induce the 2200 stations comprising the field division of the petitioner, to furnish the car owner with the product of the manufacturer who installed the replaced part. The net effect of this design must be that the manufacturers of original parts are protected to substantial degree in their replacement business, both as against other members and non-members, however challenging may have been the competition originally for the business of the motor companies, and that this protection is of greatest advantage to those suppliers who were fortunate enough to obtain contracts for equipping the more popular makes of motor vehicles. If we are right in this it follows as a reasonable inference, if not indeed one that is inescapable, that the purpose of the catalog and its necessary effect is in the interest of specific manufacturing and distributor members, and that the ultimate findings and conclusions of the Tax Court are not clearly erroneous.

The decision of the Tax Court is affirmed.