**INDIANA RETAIL HARDWARE ASSO-CIATION, INC.**

v.

**The UNITED STATES.**

**No. 91–60.**

United States Court of Claims.

*Oct. 14, 1966.*

E. Edward Stephens, Washington, D. C., for plaintiff.

Sheldon P. Migdal, Washington, D. C., and Asst. Atty. Gen., Mitchell Rogovin, for defendant, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, WHITAKER, Senior Judge, and DURFEE, DAVIS and COLLINS, Judges.

## OPINION

WHITAKER, Senior Judge.

Plaintiff, Indiana Retail Hardware Association, Inc. (hereinafter referred to as the Association), brings this suit for the recovery of income taxes paid by it for the years 1954, 1955 and 1956. It claims that during this period it was a "business league * * * not organized for profit and no part of the net earnings of which inure[d] to the benefit of any private shareholder or individual," within the meaning of section 501(c) (6) of the Internal Revenue Code of 1954[1] and as such it was exempt from taxation by section 501(a)[2] thereof.

■ Treasury Regulation § 1.501(c) (6)–1 defines a business league as follows:

A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. * * *

This regulation was first promulgated in 1929 and has remained substantially unchanged through repeated reenactments of the revenue laws,[3] all of which contained a section or sections exempting business leagues from taxation.[4] In none of these revenue acts has Congress indicated any dissatisfaction with the definition of a business league contained in the regulation. In addition, numerous court decisions have upheld its validity as a correct interpretation of the legislative intent. See Evanston-North Shore Board of Realtors v. United States, 320 F.2d 375, 162 Ct.Cl. 682 (1963), cert. denied, 376 U.S. 931, 84 S.Ct. 700, 11 L. Ed.2d 650 (1964); United States v. Oklahoma City Retailers Ass'n, 331 F.2d 328 (10th Cir. 1964); Automotive Electric Ass'n v. Commissioner of Internal Revenue, 168 F.2d 366 (6th Cir. 1948); Apartment Operations Ass'n v. Commissioner of Internal Revenue, 136 F.2d 435 (9th Cir. 1943); Underwriters' Laboratories v. Commissioner of Internal Revenue, 135 F.2d 371 (7th Cir.), cert. denied, 320 U.S. 756, 64 S.Ct. 63, 88 L.Ed. 450 (1943). Under these circumstances the regulation must be treated as having the force and effect of law.

■ Thus, in order to qualify under the statute and regulation as a tax exempt business league, an organization must meet the following conditions: (1) It must not be organized for profit; (2)

---

1. Section 501(c) (6) provides:
   "*List of exempt organizations.*—The following organizations are referred to in subsection (a):
   * * * * *
   "(6) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

2. Section 501(a) provides:
   "*Exemption from taxation.*—An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504."

3. Treas.Reg. 74 (1929 ed.), Art. 528; Treas.Reg. 77 (Rev.Act of 1932), Art. 528; Treas.Reg. 86 (Rev.Act of 1934), Art. 101(7)–1; Treas.Reg. 101 (Rev.Act of 1938), Art. 101(7)–1; Treas.Reg. 103 (1939 Code), § 19.101(7)–1; Treas.Reg. 111 (1939 Code), § 29.101(7)–1; Treas. Reg. 118 (1939 Code), § 39.101(7)–1.

4. Revenue Act of 1932, ch. 209, § 103(7), 47 Stat. 169; Revenue Act of 1934, ch. 277, § 101(7), 48 Stat. 680; Revenue Act of 1936, ch. 690, § 101(7), 49 Stat. 1648; Revenue Act of 1938, ch. 289, § 101(7), 52 Stat. 447; Internal Revenue Code of 1939 § 101(7).

no part of its net earnings may inure to the benefit of any private shareholder or individual; (3) it must be an association of persons, incorporated or unincorporated, having a common business interest; (4) its purpose must be to promote that common business interest and not to engage in a business of a kind ordinarily carried on for profit; and (5) its activities must be directed to the improvement of conditions in the common business, as distinguished from performing particular services for individuals. All of these conditions must be met for the tax exemption to be applicable.

Since the decision in these cases depends upon the facts in each, we set out below the facts presented in this case.

The Association is an Indiana non-profit corporation which was organized in 1913 [5] and has continued in existence without interruption since that date. During the years in question it was the only trade association representing hardware retailers in the State of Indiana, with a membership of approximately 80 percent of the hardware retailers in the State, excluding hardware sections of department stores.

According to its Articles of Association, the objectives of the Association were "To promote and secure the mutual benefit, improvement, protection and cooperation of the retail hardware trade." Its constitution and by-laws stated these objectives in more detail but were consistent with the Articles of Association.

As a part of its operation during the years 1954 through 1956, the Association engaged in both income and non-income-producing activities. Its non-income-producing activities included the following: the holding each year of annual Hardware Management and Hardware Sales Conferences; the conducting of approximately 25 Display Clinics; the holding of an annual two- or three-day school on accounting and bookkeeping; the conducting of annual group meetings in each of its 15 membership districts in Indiana; the publication and distribution to members without charge of a monthly magazine, the "Hoosier Hardware News"; the response to inquiries from members concerning modernization, management, and operational problems; the carrying on of legislative activities on behalf of members, including attempts to secure the passage or defeat of various bills in the Indiana Legislature; the holding each year of an annual convention of its members; and the conduct of other similar activities. These activities were in keeping with the Association's objectives as stated in its Articles of Association.

If these had been the only activities in which the Association engaged, it would have satisfied all of the conditions required for exemption under the statute and regulation. However, as was mentioned above, the Association also engaged in income-producing activities. These activities included the sale to such of its members as wished to buy them of display fixtures and of various advertising promotional aids, such as calendars, wrapping paper, stickers and supplies, etc. The Association bought these things at wholesale prices and sold them at retail prices. It also supplied to such of its members as wished to pay for them managerial services, weekly bookkeeping, quarterly audits, yearly preparation of Federal income tax returns, and other similar services. It billed and collected premiums and distributed claim forms for underwriters who offered to the Association's members and their employees group health, accident and life insurance. For the performance of these functions it received a percentage of the premiums collected.

In addition to the foregoing income-producing activities, the Association conducted an annual hardware show at the same time as the annual convention of its members. This show was attended by some of the members and by certain in-

---

5. Prior to its incorporation as the Indiana Retail Hardware Asosciation, Inc., the Association has operated as a non-profit association, the Southern Indiana Retail Hardware Dealers Association, from 1899.

vited nonmembers. At the show various wholesalers and manufacturers would exhibit, demonstrate, and take orders for their wares. These exhibitors rented their display areas from the Association, which had initially rented a building for the purpose of the convention and show. From this rental of exhibit space the Association derived substantial profit.

In connection with the convention and hardware show and just prior thereto each year, the Association published the "Hoosier Hardware Guide" which, in addition to containing a program for the convention, messages from the Association's president and secretary, and articles of information which members could utilize in the operation of their business, contained also a program for the show, a listing of the exhibitors at the show and their exhibit booth numbers, and advertisements for the goods and services which the Association sold. It also contained advertisements by exhibitors at the show and various other business concerns connected with the retail hardware trade. These advertisements, which constituted the major portion of the Guide, had been solicited by the Association and were a source of considerable income for it.

On May 26, 1953, the Commissioner of Internal Revenue finally held that plaintiff was not entitled to exemption. He said in conclusion:

Based upon a careful review of the evidence furnished, it is our opinion that one of your primary purposes as demonstrated by your operations is to engage in the sale of supplies and equipment to your members and that your activities in connection therewith constitute the performance of particular services for individual members as a convenience or economy in their business, rather than the improvement of business conditions of retail hardware merchants as a whole. Furthermore, you are engaged in activities which are ordinarily carried on for

profit, and the fact that such activities may not result in a profit, or produce only sufficient income to be self-sustaining, is not controlling. Therefore, it is held that you are not entitled to exemption under the provisions of section 501(c) (6) of the 1954 Code for 1954 and subsequent years. Accordingly, you are required to file income tax returns on Form 1120 for 1954 and subsequent years.[6]

Plaintiff does not deny that services for individuals occupied about half its time, but it says that services rendered individual members promoted the common interest of all and, hence, should not impair its exempt status. How the members as a whole profited from bookkeeping services, for example, rendered an individual member, we do not see. As we said in Evanston-North Shore Board of Realtors v. United States, supra, 320 F. 2d at 379, 162 Ct.Cl. at 688; "When each member contributes in proportion to what he receives, it is a strong indication that the benefits received are not * * 'inherently group benefits.'"

Nor was the trade show, which the Association held each year with its annual convention, and the "Hoosier Hardware Guide" which it published in connection therewith, from which it derived substantial profit, for the common benefit of the members. It was, for all relevant purposes, indistinguishable from the "Fashion Shows" or "Market Weeks" which we held in Men's and Boys' Apparel Club of Florida v. United States, 168 Ct.Cl. 147, 148 (1964), were " * * for the direct economic benefit of individuals rather than for the improvement of business conditions for the industry generally."

This, however, does not end our inquiry. An organization which by its principal purpose and activity is entitled to exempt status does not lose that status by engaging in incidental activities which, standing alone, would deprive it of the exemption. Evanston-North Shore

6. Plaintiff's right to exemption had not been questioned until 1951, and exemption was not denied until 1954, but we do not know what the facts were in those prior years.

Board of Realtors v. United States, supra, 320 F.2d at 380, 162 Ct.Cl. at 691. It thus becomes our task to determine whether the income-producing activities in which the Association engaged were merely incidental or whether they were sufficiently substantial to deprive it of an exempt status.

We have set out in finding 13, infra, for the years 1954 and 1955 the income [7] derived by the Association from each of its various activities and the percentage of its total income from each of these activities. It will be noted that for the year 1954 the income derived from activities not for the common benefit of all amounted to 58.54 percent of the Association's total income, while the income from membership fees and interest amounted to only 41.46 percent. For the year 1955 the income from such activities constituted 59.81 percent of the total income as against 40.19 percent for membership fees and interest.[8]

We think the fact that such a large percentage of the Association's income was derived from activities for the benefit of individuals is a strong indication that these activities were more than merely incidental. Cf. Scripture Press Foundation v. United States, 285 F.2d 800, 152 Ct.Cl. 463 (1961), cert. denied, 368 U.S. 985, 82 S.Ct. 597, 7 L.Ed.2d 523 (1962).

The only other evidence in the record relevant to this question is the time devoted to these activities by plaintiff's employees as compared with that spent on activities for the common benefit. Plaintiff's managing director testified that he would estimate that roughly about 50 percent of the time of employees of the Association was devoted to its income-producing activities rather than to activities for the improvement of conditions in the retail hardware business as a whole.

We hold that the high percentage of income obtained by the Association from performing particular services for individuals as a convenience and economy in their business and its other income-producing activities, and the amount of time devoted by employees of the Association to the performance of these services is sufficiently substantial so that the income-producing activities cannot be said to be merely incidental activities of the Association, but are one of its two main purposes. Evanston-North Shore Board of Realtors v. United States, supra, 320 F.2d at 382, 162 Ct.Cl. at 694. We are of opinion that Congress did not mean to grant exemption from the payment of taxes to an association engaged to such a large extent in activities ordinarily carried on for profit by persons liable for the payment of taxes on the income derived from such activities.[9]

The Association is not entitled to recover the income taxes paid for the years 1954, 1955 and 1956. The defendant has conceded the Association's right to a refund of the penalties assessed against and paid by it. The amount of the penalties was $1,262.56. The Association is entitled to recover that amount, together with interest thereon as provided by law. Judgment is entered to that effect.

7. Income means income without allocation of indirect expenses.

8. We are unable to determine from the record the exact percentage of total income derived from each type of activity for the year 1956. There is, however, evidence that the Association engaged in the same type of activities in 1956 as it did in 1954 and 1955; and that its ratio of total receipts to total direct allocable costs and expenses for 1956 was substantially the same as for 1954 and 1955. From this we infer that its ratio of income from the performance of particular services to income from membership fees and interest was approximately the same in 1956 as it was in 1954 and 1955.

9. The Association's argument that the statute of limitations, imposed by section 6501(a) of the Internal Revenue Code of 1954, had run for the years 1954 and 1955 is without merit. See Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 187–188, 77 S.Ct. 707, 1 L.Ed. 2d 746 (1957).